BRENDAN P. FARRELL ET AL. *v.* ST. VINCENT'S HOSPITAL ET AL.
(12823)

SHEA, SANTANIELLO, CALLAHAN, CORRIGAN and MORAGHAN, Js.

Argued January 15—decision released May 19, 1987

*Terence S. Hawkins,* with whom were *David W. Skolnick* and, on the brief, *Patricia Kilkenny,* for the appellants (plaintiffs).

*Ralph F. Scofield,* with whom, on the brief, were *John J. Cotter* and *Ann Marie W. Vetrosky* for the appellee (named defendant).

*Robert J. Cooney,* with whom was *Colleen M. O'Connell,* for the appellee (defendant Walter T. Shanley).

*Garie J. Mulcahey,* with whom was *Arnold J. Bai,* for the appellees (defendant Joel Eisenberg et al.)

*Robert G. Montstream,* for the appellee (defendant Nettie Rousso).

SANTANIELLO, J. This appeal from the trial court raises three evidentiary rulings in a medical malpractice action. The action was brought in two counts by Brendan P. Farrell, a minor, and his father, Thomas F. Farrell, as parent and guardian of Brendan P. Farrell, against the defendants, St. Vincent's Hospital (St. Vincent's), Nettie Rousso, Dr. Walter T. Shanley, Dr. Joel H. Eisenberg, and Fairfield County Orthopedic Associates, P.C., alleging that the named plaintiff, Brendan P. Farrell, suffered a refracture and angulation of his left lower femur as a result of improper exercising of his left leg by nurse Rousso, acting under the supervision of Shanley and Eisenberg. After a jury trial, a verdict was returned in favor of all the defendants as to both plaintiffs. From the judgment on that verdict, the plaintiffs have appealed, alleging that the trial court erred in: (1) limiting evidence of treatment

after December 15, 1973, to the issue of damages; (2) excluding the deposition of the plaintiffs' expert witness who had died at the beginning of trial; and (3) prohibiting the plaintiffs' expert in orthopedic surgery from testifying as to the standard of care owed by the defendants St. Vincent's and Rousso. We find no error.

The jury could reasonably have found the following facts: Brendan P. Farrell was hospitalized at St. Vincent's on October 2, 1973, as a result of an accident. He had sustained multiple injuries including a fracture of the shaft of the left femur, a dislocation of the right hip, and a fracture of the left knee. While Brendan was a patient at St. Vincent's, the defendants Shanley and Eisenberg, both orthopedic surgeons with Fairfield County Orthopedic Associates, undertook the care and treatment of Brendan's orthopedic problems. Both legs were placed in traction until October 11, 1973, when traction on the right leg was discontinued. The left leg remained in traction until December 12, 1973, when traction was removed in favor of lifting and knee-bending exercises. Rousso, a parttime nurse employed by St. Vincent's, was assigned by Eisenberg to perform those exercises on Brendan. The plaintiffs claim that in the process of exercising Brendan's left leg, Rousso refractured Brendan's left femur.

During the course of trial, the plaintiffs attempted to introduce evidence of negligence and malpractice after December 15, 1973. The court, however, allowed evidence of treatment and expenses subsequent to December 15, 1973, only on the issue of damages. The plaintiffs also sought to introduce the deposition of their expert witness, Dr. Charles Verstandig, a radiologist, who had died suddenly at the beginning of trial. The court excluded Verstandig's deposition in its entirety. Additionally, the plaintiffs attempted to introduce the testimony of Dr. Ned Shutkin, an orthopedic surgeon whom they had retained as an expert witness. Rousso

filed a motion in limine to prevent Shutkin from testifying as to communications made between him and her attorney during the preparation of her defense. The court granted Rousso's motion and further prohibited Shutkin from testifying as to the requisite standard of care owed by St. Vincent's and Rousso.

## I

The plaintiffs first claim that the trial court erred in excluding all evidence with respect to acts of malpractice allegedly occurring after December 15, 1973. We disagree.

During the course of their case-in-chief, the plaintiffs attempted to introduce evidence showing that the defendants negligently cared for and treated the named plaintiff's leg after December 15, 1973. The defendants objected, and the court excluded all testimony of alleged acts of malpractice beyond December 15, 1973, reasoning that such evidence went beyond the scope of the plaintiffs' complaint.[1] The court, however, allowed evidence pertaining to the issue of damages beyond that date.

A complaint must fairly put the defendant on notice of the claims of negligence against him. *Antonofsky* v. *Goldberg*, 144 Conn. 594, 599, 136 A.2d 338 (1957). The purpose of the complaint is to limit the issues to be decided at the trial of a case and is calculated to prevent surprise. *Board of Education* v. *Commission on*

---

[1] "The Court: I have examined the pleadings in this particular case, and the Court is of the opinion that the pleadings would limit the allegations of malpractice to the events on or about the 14th or 15th and probable prior that date, however, I do not feel that the pleadings, as they are written, would involve the claims of any malpractice beyond approximately the 14th or 15th of December. Obviously, course of treatment to show pain and suffering, et cetera, can be presented, but any implications of further claims of malpractice would not be appropriate in the Court's opinion and I will rule accordingly if there is an attempt to bring out other claims of acts of negligence or omission or commission, et cetera, et cetera."

*Human Rights & Opportunities,* 177 Conn. 75, 77, 411 A.2d 40 (1979); *Lundberg* v. *Kovacs,* 172 Conn. 229, 232, 374 A.2d 201 (1977); *Savin* v. *National Personnel Consultants, Inc.,* 4 Conn. App. 563, 566, 495 A.2d 1109 (1985); *Montano* v. *Kin-Therm, Inc.,* 4 Conn. App. 187, 190, 493 A.2d 266 (1985). Only those issues raised by the plaintiffs in the latest complaint can be tried before the jury. See *Schaller* v. *Roadside Inn, Inc.,* 154 Conn. 61, 65, 221 A.2d 263 (1966); *Francis* v. *Hollauer,* 1 Conn. App. 693, 696–97, 475 A.2d 326 (1984).

The plaintiffs' original complaint alleged that, on or about December 17, 1973, the defendant Rousso, acting as the agent for the defendants Shanley and Eisenberg, negligently treated and cared for Brendan P. Farrell by applying excessive force and torsion to his left leg, resulting in a refracture of that leg. The plaintiffs further alleged that Shanley and Eisenberg, "failed to prescribe reasonable limitations with respect to force and torsion to be applied to said leg in the course of physical therapy, thereby exposing said plaintiff's leg to the danger of bone injury."

In the subsequent nine and one-half years, through investigation and use of the discovery process, the plaintiffs ascertained that Rousso had not worked on December 17, 1973, but rather had last worked on December 15, 1973, and that, in fact, the alleged negligent treatment had occurred on that date. On April 11, 1985, two days after the trial had commenced, the plaintiffs filed a substitute complaint[2] alleging that Rousso

---

[2] The substitute complaint alleged in relevant part:

"3. On or about December 15, 1973, while confined to said hospital, plaintiff Brendan P. Farrell's left leg, while being exercised by defendant Nettie Rousso, was again fractured, creating greater angulation, and causing injuries and damages as hereinafter more particularly set forth. . . .

"7. Plaintiff's injuries were proximately caused by the carelessness and negligence and lack of proper skill and care of defendants, their agents and servants, in that:

had negligently refractured Brendan Farrell's leg on December 15, 1973. The substitute complaint further alleged that "[t]he defendants, Walter T. Shanley, Joel

"a. The defendants Walter T. Shanley, Joel H. Eisenberg and Fairfield County Orthopedic Associates, P.C. failed to exercise reasonable care in examining the legs of the plaintiff, Brendan P. Farrell;

"b. In exercising the leg of plaintiff, Brendan P. Farrell, the defendants, Walter T. Shanley, Joel H. Eisenberg and Fairfield County Orthopedic Associates, P.C., and Nettie Rousso, agent as aforesaid, did cause the leg to be refractured and further angulated;

"c. The defendants, Walter T. Shanley, Joel H. Eisenberg, Fairfield County Orthopedic Associates, P.C. and Nettie Rousso, agent as aforesaid, failed to properly treat and care for said leg;

"d. In furnishing physical therapy to the plaintiff, Brendan P. Farrell, the defendant, Nettie Rousso, agent as aforesaid, employed excessive force and/or torsion to said plaintiff's leg, resulting in refracture of said leg;

"e. The defendants Walter T. Shanley, Joel H. Eisenberg and Fairfield County Orthopedic Associates, P.C. failed to prescribe reasonable limitations with respect to force and torsion to be applied to said leg in the course of physical therapy, thereby exposing said plaintiff's leg to the danger of bone injury.

"8. As the result of the carelessness, negligence and lack of proper skill and care of the defendants, their agents and servants, the plaintiff Brendan P. Farrell's left leg is permanently disabled. The defendants, their agents and servants as aforesaid, acted with carelessness, negligence and lack of proper skill and care, in that:

"a. The defendants Walter T. Shanley, Joel H. Eisenberg and Fairfield County Orthopedic Associates, P.C. failed to exercise reasonable care in examining the legs of the plaintiff, Brendan P. Farrell;

"b. In exercising the leg of plaintiff, Brendan P. Farrell, the defendants, Walter T. Shanley, Joel H. Eisenberg and Fairfield County Orthopedic Associates, P.C., and Nettie Rousso, agent as aforesaid, did cause the leg to be refractured and further angulated;

"c. The defendants, Walter T. Shanley, Joel H. Eisenberg, Fairfield County Orthopedic Associates, P.C. and Nettie Rousso, agent as aforesaid, failed to properly treat and care for said leg;

"d. In furnishing physical therapy to the plaintiff, Brendan P. Farrell, the defendant, Nettie Rousso, agent as aforesaid, employed excessive force and/or torsion to said plaintiff's leg, resulting in refracture of said leg;

"e. The defendants Walter T. Shanley, Joel H. Eisenberg and Fairfield County Orthopedic Associates, P.C. failed to prescribe reasonable limitations with respect to force and torsion to be applied to said leg in the course of physical therapy, thereby exposing said plaintiff's leg to the danger of bone injury. . . ."

H. Eisenberg, Fairfield County Orthopedic Associates, P.C. and Nettie Rousso, agent, as aforesaid, failed to properly treat and care for said leg . . . In furnishing physical therapy to the plaintiff, Brendan P. Farrell, the defendant, Nettie Rousso, agent as aforesaid employed excessive force and/or torsion to said plaintiff's leg, resulting in refracture of said leg; [and] The defendants Walter T. Shanley, Joel H. Eisenberg and Fairfield County Orthopedic Associates, P.C. failed to prescribe reasonable limitations with respect to force and torsion to be applied to said leg in the course of physical therapy, thereby exposing said plaintiff's leg to the danger of bone injury."

Having amended their complaint by filing the substitute complaint on April 11, 1985, after trial had begun and some nine and one-half years after suit was commenced, the plaintiffs were expected to present their claims accurately and with clarity. The three specific allegations—(1) that Rousso, Shanley, Eisenberg and Fairfield County Orthopedic Associates, failed to treat and care for Brendan Farrell's leg properly; (2) that Rousso employed excessive force and/or torsion to the leg resulting in a refracture of that leg; and (3) that Shanley and Eisenberg failed to prescribe reasonable limitations with respect to the force and torsion to be applied to the leg during the course of physical therapy—clearly centered around Rousso's alleged acts of negligence on December 15, 1973. The plaintiffs' substitute complaint never alleged any negligent or wrongful conduct on the part of the defendants after the alleged refracture on December 15, 1973. Therefore, the court was correct in excluding any evidence of alleged negligence or malpractice beyond that date.

The plaintiffs also claim that any variance between the negligence alleged in their substitute complaint and the evidence they offered was not material and that the evidence thus should have been allowed. They fur-

ther contend that, even if the proffered evidence was beyond the allegations of negligence contained in their substitute complaint, the court should have allowed them to amend that complaint to conform to the evidence they sought to present. We disagree.

After the trial court had excluded all evidence of alleged negligence occurring after December 15, 1973, the plaintiffs sought to amend their complaint to conform with the proffered evidence. The defendants objected, claiming that such an amendment would come as a surprise and would be unduly prejudicial.[3] The court sustained the objections and refused to allow the plaintiffs to amend their complaint further with respect to the dates of the alleged acts of negligence. The plaintiffs duly excepted.

"While our courts have been liberal in permitting amendments; *Johnson* v. *Toscano,* 144 Conn. 582, 587,

[3] "Mr Cooney: May it please the Court, I would object to the proposed amendment, and there is no need to do so probably, but I would remind the Court that when it granted the other amendment it indicated that it would be inclined not to grant any further amendments relating to the date. This not only relates to the date, but it relates to a completely different alleged act of malpractice which allegedly took place after the minor plaintiff was discharged from St. Vincent's Hospital, and it deals with, I think, really a complete different subject matter and would be prejudicial and unfair to the defendants, my defendant, and I certainly would claim surprise by it because it was never raised by any of the plaintiffs' attorneys in any of their conferences or in any of their motions to amend the complaint that was filed April 9, or April 8.

"Mr. Bai: I certainly object, Your Honor, and I suggest to Your Honor that I am very surprised by it. This entire claim, since the suit was instituted in 1975, I believe, was revolved around what happened at St. Vincent's Hospital on or about a certain day when there was an alleged refracture. The theory of the case was that the treatment up to that time was somehow lacking and somehow there was a refracture of the leg because of this poor management allegedly. There was never any allegation or hint of any allegation of anything wrong thereafter or any alleged malpractice after Brendan's discharge from St. Vincent's Hospital, which we are getting into now. It's a totally different theory, it's a totally different case, and we never heard about it until 12 o'clock noon today, and I would certainly object, Your Honor, to any proposed amendment."

136 A.2d 341 (1957); this liberality has limitations. Amendments should be made seasonably. Factors to be considered in passing on a motion to amend are the length of delay, fairness to the opposing parties and the negligence, if any, of the party offering the amendment. *Cummings* v. *General Motors Corporation,* 146 Conn. 443, 449–50, 151 A.2d 884 (1959). The motion to amend is addressed to the trial court's discretion which may be exercised to restrain the amendment of pleadings so far as necessary to prevent unreasonable delay of the trial. *Freccia* v. *Martin,* 163 Conn. 160, 164, 302 A.2d 280 (1972)." *Beckman* v. *Jalich Homes, Inc.,* 190 Conn. 299, 302–303, 460 A.2d 448 (1983).

This case had already spanned more than eleven years since the alleged act of malpractice, and has been within the court system over nine years. The original complaint had already been amended once, when a substitute complaint was allowed two days after the trial had commenced. The plaintiffs had had more than ample time to complete their investigations and clearly set forth their claims. An amendment at that stage of the proceedings, allowing a new theory of alleged malpractice, would probably have resulted in a mistrial, further delaying the proceedings. To allow an amendment under these circumstances would have unduly prejudiced the defendants. It is within the discretion of the trial court to grant or deny an amendment, and a decision to deny an amendment during a trial will not be disturbed unless there is a clear abuse of that discretion. *Lawson* v. *Godfried,* 181 Conn. 214, 216, 435 A.2d 15 (1980). It cannot be said, under the circumstances in this case, that the court abused its discretion by refusing to allow the plaintiffs to amend their complaint further.

## II

The plaintiffs next claim that the trial court erred in excluding the deposition of one of their expert wit-

nesses, Dr. Charles Verstandig, who had viewed the x-rays of Brendan Farrell's leg. Verstandig died at the beginning of the trial, and the plaintiffs sought to introduce his deposition which had been taken prior to trial. The court, however, ruled that the deposition was inadmissible. Although there were several claims of error involving the court's refusal to admit the deposition into evidence, the dispositive ruling of the court was that the deposition was too confusing to be presented to the trier of fact. We find no error.

"[R]elevant evidence which assumptively is admissible will be rejected by the trial judge if he determines that the probative value of the evidence is outweighed by considerations of prejudice, confusion of the issues, misleading the jury, undue consumption of time, or, possibly, unfair surprise. . . . The decision whether the probative value of the evidence outweighs one or more of the counterweights is made by the trial judge, usually after objection by counsel. Appellate courts wisely have reposed in the trial court considerable discretion in applying this balancing test. Unless there is a clear abuse of this discretion, no error is committed." G. Lilly, Evidence (1978) § 13, p. 29; see also C. McCormick, Evidence (3d Ed. 1984) § 185. Connecticut has vested its trial judges with discretion in excluding relevant evidence if its probative value is outweighed by such factors as delay, confusion and prejudice. C. Tait & J. LaPlante, Handbook of Connecticut Evidence (1976) § 8.1 (c), p. 128.

As we have stated, " '[o]ne of the chief roles of the trial judge is to see that there is no misunderstanding of a witness's testimony. The judge has a duty to comprehend what a witness says as much as it is his duty to see that the witness communicates with the jury in an intelligible manner. A trial judge can do this in a fair and unbiased way. His attempt to do so should not be a basis [for] error. Where the testimony is confus-

ing or not altogether clear the alleged "jeopardy" to one side caused by the clarification of a witness's statement is certainly outweighed by the desirability of factual understanding. The trial judge should strive toward verdicts of fact rather than verdicts of confusion.' *Ray* v. *United States,* 367 F.2d 258, 261 (8th Cir. 1966), cert. denied, 386 U.S. 913, 87 S. Ct. 863, 17 L. Ed. 2d 785 (1967), quoted in *United States* v. *McColgin,* 535 F.2d 471, 475 (8th Cir.), cert. denied, 429 U.S. 853, 97 S. Ct. 145, 50 L. Ed. 2d 128 (1976)." *State* v. *Bember,* 183 Conn. 394, 402–403, 439 A.2d 387 (1981).

In addition, Practice Book § 248 (b)[4] and General Statutes § 52-149a (a)[5] allow for the admissibility of depositions into evidence under appropriate circum-

[4] "[Practice Book] Sec. 248. ——USE OF DEPOSITIONS IN COURT PROCEEDINGS

"(1) Use of Depositions.

"At the trial of a civil action, probate proceeding or administrative appeal, or upon the hearing of a motion or an interlocutory proceeding, any part or all of a deposition, so far as admissible under the rules of evidence applied as though the witness were there present and testifying, may be used against any party who was present or represented at the taking of the deposition or who had reasonable notice thereof, in accordance with any of the following provisions . . .

"(b) The deposition of any physician, psychologist, chiropractor, natureopathic physician, osteopathic physician or dentist licensed under the provisions of the General Statutes may be received in evidence in lieu of the appearance of such witness at the trial or hearing whether or not the person is available to testify in person at the trial or hearing."

[5] "[General Statutes] Sec. 52-149a. DEPOSITIONS OF MEDICAL WITNESSES. (a) The deposition of any physician, psychologist, chiropractor, natureopathic physician, osteopathic physician or dentist licensed under the provisions of the general statutes, may be taken on behalf of either party to any civil action, workers' compensation matter or probate proceeding, in which the physician, psychologist, chiropractor, natureopathic physician, osteopathic physician or dentist may be called as an expert witness, on notice by certified mail to each adverse party or his attorney, as the case may be. The deposition may be received in evidence at the trial or hearing of the civil action, workers' compensation matter or probate proceeding in lieu of the appearance of the witness in court or at the hearing. The deposition may be taken by stenographic means, videotape or in such other manner as may be provided by rule of court or of the compensation commissioners."

stances, but are permissive in nature, leaving the ultimate determination to the trial judge.

Here, the court carefully reviewed the deposition, reading it in the presence of counsel, and decided that its probative value was outweighed by its inclination to confuse the jury should it be admitted. For example, Verstandig, during the deposition, made reference to certain portions of the x-rays being analyzed by pointing to the x-rays using the words "here, here, here" without any description as to where he was pointing. The jury, at best, would have had to engage in speculation. Thus the court concluded that the jury would have been confused by the admission of such testimony.[6]

Notwithstanding, the plaintiffs claim that the court abused its discretion in making such an evidentiary ruling. "On appeal, the trial court's rulings on the admissibility of evidence are accorded great deference. *State*

---

[6] "The Court: The Court has had an opportunity to review and go over the deposition of Dr. Verstandig and relate it to the issues in this case and also study the method by which the testimony of Dr. Verstandig was elicited in the deposition.

"The Court finds that in all critical times when Dr. Verstandig is laying the basis of his opinions as to his analysis of the x-rays and the opinions that he derives from that analysis, that he's pointing to various x-rays with the words here, here, here.

"The word 'here' appears many times in his testimony, but there is little or none of any recording of what exactly the doctor was pointing to. Certainly, at best we know he was pointing to an x-ray and—but the point is we are not sure from the record where in the x-ray that he is pointing with any exactitude.

"With that in mind, if we were to present this deposition to the jury, what we would do presumably is put up an x-ray on the view box and then proceed to 'here, here, here and here' without anyone being able to point as—to the jury as to what the doctor is testifying to or to what he is pointing.

"It would seem to me at that point that the jury then could use its own surmise, conjecture, etc., to understand what it was the doctor was referring to and it would be relatively difficult if not impossible for the defense, which do have the right to put up a defense, to counter the material that was elicited from Dr. Verstandig since we would never be certain, even

v. *Sharpe,* 195 Conn. 651, 658–59, 491 A.2d 345 (1985); *State* v. *Piskorski,* 177 Conn. 677, 695, 419 A.2d 866, cert. denied, 444 U.S. 935, 100 S. Ct. 283, 62 L. Ed. 2d 194 (1979). Rulings on such matters will be disturbed only upon a showing of clear abuse of discretion. *State* v. *Falcon,* 196 Conn. 557, 566, 494 A.2d 1190 (1985)." *State* v. *Boucino,* 199 Conn. 207, 225, 506 A.2d 125 (1986). The party making the claim of error has the burden of showing that the court clearly abused its discretion. *Collens* v. *New Canaan Water Co.,* 155 Conn. 477, 495, 234 A.2d 825 (1967); *State* v. *DeMartin,* 153 Conn. 708, 710, 216 A.2d 204 (1965); *Shaywitz* v. *Singing Oaks Day Camp, Inc.,* 8 Conn. App. 71, 73, 510 A.2d 1013 (1986). The plaintiffs here have failed to support their claim. In light of the court's thorough review of the deposition and the apparent lack of clarity exhibited

---

if we put an expert on the stand, that his here was the same here as Dr. Verstandig's here; and therefore there would be an arguable question as to the accuracy of either opinion of Dr. Verstandig as expressed from the record and the countervailing opinion of any expert that was presented by the defendants since arguably one could be talking in the vernacular about oranges and the other about apples.

"And they would never really be sure that the jury was getting an accurate representation or at least an understanding of the representations of Dr. Verstandig or an accurate representation of the defenses being raised to the testimony in the opinions of Dr. Verstandig.

"It's very unfortunate that the Court cannot find the ability in its opinion to allow this particular deposition in. Obviously one of the points that the Court shall appreciate, the importance of all what the plaintiff may consider relevant evidence into the case; however, the Court finds that in this particular case, although the ultimate opinions may be relevant to the issues in the case, the foundation for those opinions are not properly presented in the record that is presentable to a trier of fact especially in such a sophisticated area as a medical malpractice case.

"This is not a situation where it's—the issue is who went through the red light and in the vernacular of the plan, somebody has testified to those areas which are more or less of common knowledge, but need only the explanation of the observations. This is a combination of observations and professional opinion and the Court, therefore, concludes that with empathy to the plaintiffs, that the entire document cannot be admitted and read to the trier of fact, the jury."

by the deposition itself, the court was clearly acting within its discretion in ruling the deposition inadmissible.

### III

The plaintiffs' third and final claim is that the trial court erred in prohibiting Dr. Ned Shutkin from testifying as to the standard of care owed by the defendants St. Vincent's and Rousso.

Several years prior to trial, Shutkin, an orthopedic surgeon, was contacted by Rousso and her attorney for the purpose of examining the medical records in this case and assisting in the preparation of her defense. Rousso's counsel discussed the case with Shutkin on several occasions, and Shutkin, in return, rendered a written report relating to the issues involved in this case. Rousso, however, did not retain Shutkin as an expert witness.

Shortly before trial, the plaintiffs consulted with Shutkin and retained him to testify at trial. As a consequence, Rousso filed a motion to disqualify Shutkin from testifying against her and a motion in limine to limit his testimony, claiming that any such testimony would violate her attorney-client privilege and the "work product doctrine."[7] The court granted Rousso's motion in limine and prohibited Shutkin from testifying about correspondence between himself and Rousso's counsel and from testifying as to the standard of care owed by Rousso and St. Vincent's. The court did allow Shutkin to testify with regard to all other defendants. The plaintiffs now claim that the trial court erred in so limiting Shutkin's testimony.

We need not consider the merits of the plaintiffs' claim. Practice Book § 4185 (formerly § 3063) states

[7] Counsel for Shanley also filed a motion to disqualify Shutkin from testifying, and the plaintiffs filed an objection to Rousso's motion in limine.

in relevant part that "[t]he supreme court shall not be bound to consider a claim unless it was distinctly raised at the trial or arose subsequent to the trial. . . . In jury trials, where there is a motion, argument, or offer of proof or evidence in the absence of the jury, whether during trial or before, pertaining to an issue that later arises in the presence of the jury, *and counsel has fully complied with the requirements for preserving his objection or exception to the judge's adverse ruling* thereon in the absence of the jury, the matter shall be deemed to be distinctly raised at the trial for purposes of this rule . . . ." (Emphasis added.) See also Practice Book § 288.[8]

In the present case, after the trial court limited the scope of Shutkin's testimony, the plaintiffs did not take an exception to the court's ruling; moreover, they did not except to the court's limiting instruction during the examination of Shutkin[9] or to the court's charge to the jury concerning Shutkin's testimony.[10] " 'The purpose

---

[8] "[Practice Book] Sec. 288. OBJECTIONS TO EVIDENCE

"Whenever an objection to the admission of evidence is made, counsel shall state the grounds upon which it is claimed or upon which objection is made, succinctly and in such form as he desires it to go upon the record, before any discussion or argument is had. Argument upon such objection shall not be made by either party unless the court requests it and, if made, must be brief and to the point. An exception to the ruling must be taken in order to make it a ground of appeal."

[9] "The Court: Yes, I will. Ladies and gentlemen of the jury, again I remind you that the doctor's testimony is directed to the orthopedic treatment of the plaintiff and is not to be used in any way to consider any standards of care as to the nursing treatment or the treatment—or the standard of care of the employer of the nurse, that is St. Vincent's Hosptial.

"It's offered only as to the doctors and the professional corporation in this particular case and that there is no—again I remind you, no liability on the part of the doctors for anything that you might find that was done by either the staff at St. Vincent's Hospital or the hospital itself."

[10] The court stated during its instructions to the jury:

"I think this is a good point to remind you that the testimony of Dr. Shutkin was limited to the standard of care for Drs. Shanley and Eisenberg and was not submitted or allowed for the standard of care for nurse Rousso or St. Vincent's Hospital."

of requiring an attorney to except is not merely formal. An exception serves the important function of alerting the trial court to error while there is time to correct it without ordering a retrial.' *State* v. *Jones,* 193 Conn. 70, 88, 475 A.2d 1087 (1984)." *State* v. *Anderson,* 6 Conn. App. 15, 18, 502 A.2d 446 (1986); *State* v. *Jackson,* 3 Conn. App. 132, 135, 485 A.2d 934 (1985).

Not only did the plaintiffs fail to except to the trial court's ruling on Rousso's motion in limine, but an examination of the transcript reveals that the plaintiffs conceded that they would not question Shutkin with respect to the standard of care owed by Rousso. At the hearing on the defendants' motions to disqualify Shutkin from testifying, the plaintiffs' counsel stated that "[t]he question is what Dr. Shutkin's testimony will be. If Mr. Cotter wants to be assured that [Dr. Shutkin] would be asked no standard of care questions with respect to the nurse, the answer is he will not be." Counsel later reiterated this point by stating that "I will not inquire of Dr. Shutkin anything concerning standard of care applicable to nurses in exercising a patient such as Brendan Farrell and I stand by that statement. . . . That is my position." Moreover, the court recognized, and apparently relied upon, the plaintiffs' concessions in making its rulings.[11]

Accordingly, the plaintiffs cannot now be heard to complain that the trial court erred in prohibiting

---

[11] "The Court: I'm trying to—it's limited to—in other words, I'm granting your motion to disqualify Dr. Shutkin from testifying, Mr. Montstream, but that limitation is to his—between his observation and the defendant Rousso's standard of care.

"In other words, he can make observations as to what he saw and presumably his observations as to when it occurred, but he cannot, as Mr. Skolnick indicated, testify that it is in his opinion a violation of any standard of care as to nurse Rousso. Or nurses in general."

Shutkin from testifying as to the standard of care owed by Rousso and St. Vincent's.[12]

There is no error.

In this opinion the other justices concurred.

---

[12] The plaintiffs' claims against St. Vincent's were based vicariously on the alleged negligence of Rousso; there were no separate claims of negligence made against the hospital. Any testimony by Shutkin concerning the standard of care of the hospital would necessarily have involved the conduct of Rousso. Therefore, the court was correct in precluding Shutkin from testifying as to the standard of care owed by St. Vincent's as well as the standard of care owed by Rousso.