# WILLIAM GAUDET *v.* SAFECO INSURANCE COMPANY (14128)

PETERS, C. J., SHEA, GLASS, COVELLO and F. X. HENNESSY, Js.

Argued April 24—decision released July 2, 1991

*James J. Ruane,* for the appellant (plaintiff).

*James M. Connolly,* with whom was *Wilfred J. Rodie, Jr.,* for the appellee (defendant).

SHEA, J. In this case, we are asked to consider whether an insurer can resist mandatory arbitration of an uninsured motorist insurance claim on the ground that the claimant seeking arbitration is not entitled to enforce the policy's arbitration provision because he may be barred by statute from receiving benefits under the policy. We hold that in an action to compel arbitration of an uninsured motorist insurance claim the court should order arbitration of this issue as well as all other issues that may reasonably be characterized as issues of coverage. Because the trial court in this case sought to resolve in the first instance a legal issue pertaining to a claim for uninsured[1] motorist coverage, instead of granting the claimant's request for arbitration, we reverse.

The plaintiff, William Gaudet, filed a complaint against the defendant, Safeco Insurance Company (Safeco), seeking an order compelling Safeco to arbitrate Gaudet's claim for uninsured motorist coverage. The complaint alleged that on September 25, 1987, when the accident that caused Gaudet's injuries occurred, Gaudet had been a passenger in an automobile owned by Stephen A. Chilinsky and insured by Safeco. The automobile allegedly had been operated by James Robinson, who was uninsured.[2] Safeco answered

---

[1] Throughout this opinion, we use the term "uninsured" to refer to both "uninsured" and "underinsured" motorist coverage.

[2] The trial court, *Curran, J.,* subsequently granted Safeco's motion to cite in as a party defendant American Mutual Insurance Company (American), which insured Gaudet's parents. When American was declared insolvent, Gaudet, apparently without objection, withdrew the complaint as to American. See General Statutes (Rev. to 1987) § 38-175c, requiring uninsured motorist coverage to protect those otherwise entitled to recover from owners or operators of "insured motor vehicles, the insurer of which becomes insolvent prior to payment of such damages."

by a general denial and raised one special defense: "The plaintiff is precluded from recovering pursuant to Connecticut General Statutes § 38-331."[3] Gaudet moved to strike this defense. In opposing the motion, Safeco claimed that Gaudet and Robinson had stolen the Chilinsky vehicle, that § 38-331 barred Gaudet from recovering uninsured motorist's benefits under Chilinsky's policy, and that, because the statute barred Gaudet from recovering under the policy, the statute also prevented him from compelling arbitration of his coverage claim. In response, Gaudet asserted that he was a friend of Chilinsky's daughter, Magdalena, and had believed he had her implied permission to use the vehicle, that in any event, § 38-331 did not apply to claims for uninsured motorist coverage, and that even if it did apply to such claims, the issue presented a mixed question of fact and law to be decided, in the first instance, by an arbitrator. The trial court, *Kulawiz, J.*, agreed with Safeco, and denied Gaudet's motion to strike.

During the ensuing three day trial, the court, *Meadow, J.*, heard nine witnesses and entered twenty-

---

[3] "[General Statutes (Rev. to 1987)] Sec. 38-331. CONVERTER OF PRIVATE PASSENGER MOTOR VEHICLE DISQUALIFIED. A person who converts a private passenger motor vehicle is disqualified from basic or added reparations benefits as provided in this chapter, including benefits otherwise due him as a survivor, from any source other than an insurance policy under which the converter is a basic or added reparations insured, for injuries arising out of the maintenance or use of the converted vehicle. If the converter dies from the injuries his survivors are not entitled to basic or added reparations benefits from any source other than an insurance policy under which the converter is a basic reparations insured. For the purpose of this section, a person is not a converter if he uses the motor vehicle in the good faith belief that he is legally entitled to use it."

This section has been transferred to General Statutes (Rev. to 1991) § 38a-375. Because the legislature in 1990 reorganized and renumbered the motor vehicle insurance statutes, we refer to the 1987 revision of the statutes in all of our statutory references throughout this opinion.

one items into evidence. The trial generated 551 pages of transcript. The transcript indicates that neither side presented opening or closing arguments, instead filing pretrial and posttrial briefs. The only issue at trial was whether Gaudet had "converted" the vehicle within the meaning of § 38-331; the only other issues briefed were those previously raised by Gaudet.

In its memorandum of decision, the trial court held that, once Safeco had raised a defense based on § 38-331, Gaudet, as part of his responsibility to prove he was entitled to uninsured motorist insurance benefits, was also required to prove "by a preponderance of the evidence, no conversion or a good faith belief by the applicant that he had permission to use the vehicle under the coverages provided" and that Gaudet "has not met this burden." The court found that the vehicle had been converted under § 38-331, but that "[t]he evidence did not demonstrate who was the converter, only that the conversion took place and that Gaudet participated in the unlawful activity." The court concluded that because "Gaudet participated in an unlawful activity," "public policy prevents recovery."

I

General Statutes § 38-175c[4] requires binding arbitration for "final determination of insurance coverage"

---

[4] "[General Statutes (Rev. to 1987)] Sec. 38-175c. UNINSURED MOTORIST COVERAGE. (a) (1) Every such policy shall provide insurance, herein called uninsured motorist coverage, in accordance with such regulations, with limits for bodily injury or death not less than those specified in subsection (a) of section 14-112, for the protection of persons insured thereunder who are legally entitled to recover damages from owners or operators of uninsured motor vehicles and underinsured motor vehicles and insured motor vehicles, the insurer of which becomes insolvent prior to payment of such damages, because of bodily injury, including death resulting therefrom, provided each insurer licensed to write automobile liability insurance in this state shall provide such uninsured motorists coverage with limits requested by the named insured upon payment of the appropriate premium, but such

with respect to uninsured motorist claims if the insurance policy includes a provision for binding arbitration. The history of this provision is well documented in our case law. See, e.g., *Chmielewski* v. *Aetna Casualty &*

insurer shall not be required to provide such coverage with limits in excess of the limits of the bodily injury coverage of such policy issued to such named insured. No insurer shall be required to provide uninsured motorist coverage to (A) a named insured or relatives residing in his household when occupying, or struck as a pedestrian by, an uninsured or underinsured motor vehicle or a motorcycle that is owned by the named insured, or (B) to any insured occupying an uninsured or underinsured motor vehicle or motorcycle that is owned by such insured. Every such policy issued on or after October 1, 1971, which contains a provision for binding arbitration shall include a provision for final determination of insurance coverage in such arbitration proceeding. With respect to any claim submitted to arbitration on or after October 1, 1983, the arbitration proceeding shall be conducted by a single arbitrator if the amount in demand is forty thousand dollars or less or by a panel of three arbitrators if the amount in demand is more than forty thousand dollars.

"(2) Notwithstanding any provision of this section to the contrary, every such policy issued or renewed on and after July 1, 1984, shall provide uninsured motorist coverage with limits for bodily injury and death equal to those purchased to protect against loss resulting from the liability imposed by law unless the insured requests in writing a lesser amount, but not less than the limits specified in subsection (a) of section 14-112. Such written request shall apply to all subsequent renewals of coverage and to all policies or endorsements which extend, change, supersede or replace an existing policy issued to the named insured, unless changed in writing by the insured.

"(b) (1) An insurance company shall be obligated to make payment to its insured up to the limits of the policy's uninsured motorist coverage after the limits of liability under all bodily injury liability bonds or insurance policies applicable at the time of the accident have been exhausted by payment of judgments or settlements, but in no event shall the total amount of recovery from all policies, including any amount recovered under the insured's uninsured motorist coverage, exceed the limits of the insured's uninsured motorist coverage.

"For the purposes of this section, an 'underinsured motor vehicle' means a motor vehicle with respect to which the sum of the limits of liability under all bodily injury liability bonds and insurance policies applicable at the time of the accident is less than the applicable limits of liability under the uninsured motorist portion of the policy against which claim is made under subdivision (1) of this subsection."

*Surety Co.,* 218 Conn. 646, 657, 591 A.2d 101 (1991); *Oliva* v. *Aetna Casualty & Surety Co.,* 181 Conn. 37, 41, 434 A.2d 304 (1980). Suffice it to say that this provision requires arbitration, in the first instance, of all issues pertaining to coverage. *Chmielewski* v. *Aetna Casualty & Surety Co.,* supra, 658; *Oliva* v. *Aetna Casualty & Surety Co.,* supra, 42.

Safeco insists that its special defense did not involve an "issue of coverage" because it was based not on the policy, but on the statutes. We have previously rejected such a distinction. *Wilson* v. *Security Ins. Group,* 199 Conn. 618, 624, 509 A.2d 467 (1986); see also *Lane* v. *Aetna Casualty & Surety Co.,* 203 Conn. 258, 265, 524 A.2d 616 (1987).

Safeco also contends that our holding in *Oliva* v. *Aetna Casualty & Surety Co.,* supra, that all issues of coverage must be decided by the arbitrator in the first instance, does not extend to claims made by "strangers to the contract." Safeco points out that General Statutes § 52-410 (a)[5] permits only a "party" to a written contract providing for binding arbitration to bring an action to compel the other party to arbitrate his claim.

Technically, the only "parties" to the contract are the insurance company and the purchaser, or, perhaps, the named insureds. In *Paranko* v. *State,* 200 Conn.

[5] "[General Statutes] Sec. 52-410. APPLICATION FOR COURT ORDER TO PROCEED WITH ARBITRATION. (a) A party to a written agreement for arbitration claiming the neglect or refusal of another to proceed with an arbitration thereunder may make application to the superior court for the judicial district in which one of the parties resides or, in a controversy concerning land, for the judicial district in which the land is situated or, when the court is not in session, to any judge thereof, for an order directing the parties to proceed with the arbitration in compliance with their agreement. The application shall be by writ of summons and complaint, served in the manner provided by law."

51, 54, 509 A.2d 508 (1986), we observed, however, that while § 52-410 "limits the availability of the remedy to 'parties' . . . the word is not defined." We concluded that "[t]he term is used generically" so that its "meaning must therefore be derived from the agreement itself." Id.[6]

Where certain terms of a contract have been, in effect, legislatively dictated, it is appropriate to consider legislative intent in interpreting those terms. Here, the clear legislative purpose favoring arbitration of all uninsured motorist coverage issues would be defeated if it were available only to named insureds. In enacting § 38-175c, the legislature thus implicitly assumed that the word "party" in § 52-410 would encompass all persons to whom the uninsured motorist statute gave enforcement powers. In the context of uninsured motorist coverage, therefore, we conclude that § 52-410 does not exclude enforcement of its terms by third party beneficiaries. We construe the word "party" within § 52-410 to refer to anyone on whom the agreement confers enforcement rights.[7]

---

[6] In that case, we held that individual union members have standing as "parties" to enforce the arbitration provision of a collective bargaining agreement only if the agreement expressly gives them the right to seek arbitration of their grievances. If the agreement is silent, however, they are deemed to have ceded all such enforcement rights to their duly elected bargaining representative, which is, in effect, their enforcement agent. See *Paranko* v. *State,* 200 Conn. 51, 56, 509 A.2d 508 (1986).

[7] General Statutes § 52-410 was enacted in 1929 as a legislative response to judicial refusal to enforce arbitration clauses as violating public policy. See *Paranko* v. *State,* 200 Conn. 51, 54, 509 A.2d 508 (1986). Since 1929, the wheel has turned, and most courts favor arbitration as an expeditious method of settling certain types of disputes. See, e.g., *Shearson/American Express, Inc.* v. *McMahon,* 482 U.S. 220, 226, 107 S. Ct. 2332, 96 L. Ed. 2d 185 (1987). There is accordingly little reason to distinguish between a third party beneficiary's right to enforce an arbitration clause of a contract and a third party beneficiary's right to enforce any other clause of a contract.

Section 52-410 aside, however, Safeco contends that *Oliva* does not require arbitration of coverage issues until a claimant first has proved his status as an "insured," at least to the extent of proving that he was not statutorily precluded from being an "insured," as a condition precedent to asserting a contractual right to enforce the policy's arbitration clause. Safeco points to language contained in § 38-175c (a) (1), which mandates arbitration of uninsured motorist claims by those "legally entitled" to uninsured motorist insurance benefits.

This is putting the cart before the horse. Were every third party claimant seeking uninsured motorist coverage required to prove first that he ultimately would be entitled to receive the coverage sought in order to compel arbitration of his claim, he would have little left to arbitrate. Such a circular approach to § 38-175c frustrates the legislative intent to vest primary jurisdiction of coverage issues in the arbitrator in order "to avoid the institutional difficulty perceived by the court in *Frager* [v. *Pennsylvania General Ins. Co.,* 155 Conn. 270, 231 A.2d 531 (1967)], namely, clogging the courts with piecemeal litigation, and leveling the procedural playing field by guarding against the possibility of insurers unfairly using their superior economic resources to delay the final resolution of claims by their insureds." *Chmielewski* v. *Aetna Casualty & Surety Co.,* supra, 658. In this case the trial court needlessly consumed three days of court time in order to determine whether Gaudet had converted the Chilinsky vehicle, an issue equally pertinent to the policy exclusion from coverage for an otherwise "covered person" who uses the vehicle without a reasonable belief that he is entitled to do so. The trial court sought to resolve this issue so that the insurer would be spared "costly protracted arbitration" of a claim doomed to failure by a relevant

statute. The legislature, however, intended arbitration to prevent more costly and protracted litigation in the courts, not the other way around.

By characterizing the conversion issue as an issue of arbitrability, moreover, the court effectively preempted arbitration of the merits of Gaudet's claim, whatever its disposition of that issue. Had the trial court found the issue in Gaudet's favor, collateral estoppel might have foreclosed the arbitrator from considering the insurer's claim that Gaudet was excluded from coverage because he had used the vehicle without a reasonable belief that he was entitled to do so. Contrary to the intention of the legislature, the trial court's construction of § 38-175c inevitably requires the court, rather than an arbitrator, first to hear the merits of an uninsured motorist insurance claim.

We adhere to the established rule that "arbitrability . . . is ordinarily a legal question for the courts." *Beloff* v. *Progressive Casualty Ins. Co.*, 203 Conn. 45, 54, 523 A.2d 477 (1987); see also *Welch Group, Inc.* v. *Creative Drywall, Inc.*, 215 Conn. 464, 467, 576 A.2d 153 (1990). Arbitrability includes the issue of who is entitled to arbitrate a claim. See, e.g., *John Wiley & Sons* v. *Livingston*, 376 U.S. 543, 546–47, 84 S. Ct. 909, 11 L. Ed. 2d 898 (1964). Where an issue may fairly be characterized as either (1) an issue of arbitrability, i.e., a question for the courts to decide in the first instance, or (2) an issue of insurance coverage, i.e., a question for an arbitrator to decide in the first instance, legislative policy requires the court to elect the latter characterization and submit the issue to the arbitrator together with all other issues of insurance coverage. In this case, "it was the trial court's obligation to decide first whether the issue was arbitrable, that is, whether the claim *involved* a coverage dispute. Only if the court answered no to this question should the court have

reached the merits of the defendant's claim." (Emphasis added.) *Security Ins. Co. of Hartford* v. *DeLaurentis,* 202 Conn. 178, 187–88, 520 A.2d 202 (1987).[8]

In order to compel arbitration under § 52-410, therefore, one claiming uninsured motorist coverage need prove to the court only that (1) the policy was in effect at the time of the accident, (2) the policy provides for arbitration, (3) the claimant was in the class of "covered persons," e.g., as provided in the Chilinsky policy, an owner, occupant or driver of the insured vehicle, for whom the policy provided uninsured motorists' coverage, and (4) the insurer has refused to pay the claim for uninsured motorist benefits arising out of the claimed accident. The claimant must also state the nature of the claim to be arbitrated, which would ordinarily include allegations that his injuries were caused in a manner that, under the terms of the policy and applicable statutes, entitle him to uninsured motorist benefits, and that there is no other coverage adequate to satisfy his claim. Gaudet met these requirements and was entitled to arbitrate his claim.

## II

Judicial economy would scarcely be served, however, if we remanded the case for arbitration without reviewing the trial court's conclusion that, as a matter of law, § 38-331 (now § 38a-375) bars recovery of uninsured motorist benefits under an automobile owner's policy by the converter of a vehicle. We ordinarily address legal issues likely to arise following a remand for further proceedings. See, e.g., *Connecticut Building Wrecking Co.* v. *Carothers,* 218 Conn. 580, 605–606, 590 A.2d 447 (1991).

---

[8] An arbitrator's resolution of legal issues affecting insurance coverage is subject to de novo review in an action to confirm or vacate the arbitration award. See *Chmielewski* v. *Aetna Casualty & Surety Co.,* 218 Conn. 646, 657, 591 A.2d 101 (1991); *Aetna Life & Casualty Co.* v. *Bulaong,* 218 Conn. 51, 58, 588 A.2d 138 (1991).

The language of § 38-331 is plain. It begins: "A person who converts a private passenger motor vehicle is disqualified from *basic or added reparations benefits as provided in this chapter,* including benefits otherwise due him as a survivor, from any source other than an insurance policy under which the converter is a basic or added reparations insured . . . ." (Emphasis added.) The "chapter" referred to is chapter 690 of the General Statutes, entitled "No-Fault Motor Vehicle Insurance." Section 38-331 does not purport to limit benefits available under any other chapter, such as chapter 681 of the General Statutes, the chapter containing § 38-175c, entitled "Uninsured Motorist Coverage." It plainly limits only "basic or added reparations benefits," that is, "no-fault" benefits.

Safeco maintains, however, that General Statutes §§ 38-326[9] and 38-327,[10] which require motorists to maintain "residual liability insurance," incorporate uninsured motorist coverage required by § 38-175c into chapter 690 and indicate a legislative intent to include uninsured motorist coverage within the "benefits" which § 38-331 disqualifies a converter from receiving.

---

[9] "[General Statutes (Rev. to 1987)] Sec. 38-326. RESIDUAL LIABILITY INSURANCE. (a) Under residual liability insurance the insurer is liable to pay, on behalf of the owner or other persons insured, sums which the owner or insured is legally obligated to pay as damages because of bodily injury and property damage arising out of the ownership, maintenance or use of a private passenger motor vehicle as a motor vehicle if the injury or damage occurs within the United States of America, its territories or possessions or Canada.

"(b) Residual liability insurance shall afford coverage which satisfies the requirements of sections 38-175a to 38-175h, inclusive."

[10] General Statutes (Rev. to 1987) § 38-327 provides in pertinent part: "MANDATORY SECURITY REQUIREMENTS. (a) (1) The owner of a private passenger motor vehicle required to be registered in this state shall provide and continuously maintain throughout the registration period security in accordance with this chapter for payment of basic reparations benefits and the liabilities covered under residual liability insurance . . . ."

The general references in §§ 38-326 and 38-327 to other insurance coverage cannot be given the effect of altering the plain language of § 38-331. The phrase of § 38-331 upon which Safeco relies, moreover, "including benefits otherwise due him as a survivor, from any source other than an insurance policy under which the converter is a basic or added reparations insured," only modifies the term "basic or added reparations benefits"; it does not set out an additional category of benefits from which a converter is to be excluded.

Safeco reminds us that we have held that chapter 690 supplements our other statutes governing motor vehicle operation and insurance; see *Gentile* v. *Altermatt,* 169 Conn. 267, 299–304, 363 A.2d 1, appeal dismissed, 423 U.S. 1041, 96 S. Ct. 763, 46 L. Ed. 2d 631 (1975). If we read these statutes to form a unified body of law, Safeco asks, "can there be any serious doubt that the legislature intended to prohibit someone who participates in the conversion of a vehicle from benefiting by that act?"

"To determine the collectively expressed legislative intent, we look first to the language of the statute itself. If that language is plain and unambiguous, we go no further." *Sanzone* v. *Board of Police Commissioners,* 219 Conn. 179, 187, 592 A.2d 912 (1991). Simply because the statutory language fails to address a claimed inequity does not make that language ambiguous. "This court cannot . . . by a tortured construction of the statutory and regulatory provisions, indirectly eliminate possible inequities in coverage, where the legislature has failed to do so directly." *Roy* v. *Centennial Ins. Co.,* 171 Conn. 463, 476, 370 A.2d 1011 (1976).[11]

---

[11] Because we hold that General Statutes (Rev. to 1987) § 38-331 restricts only a converter's right to receive no-fault coverage from a policy other than his own, and does not affect his claim for uninsured motorist bene-

## III

In its preliminary counterstatement of issues, Safeco included the following question: "Does public policy preclude a converter of a motor vehicle from obtaining uninsured motorist benefits from the vehicle's owner's insurance company?" It failed to brief this issue, and we consider it abandoned. *Hayes* v. *Smith,* 194 Conn. 52, 66 n.12, 480 A.2d 425 (1984); *Milford Employees Assn.* v. *Milford,* 179 Conn. 678, 681 n.4, 427 A.2d 859 (1980); *Pastir* v. *Bielski,* 174 Conn. 193, 384 A.2d 367 (1978); *Martino* v. *Grace-New Haven Hospital,* 146 Conn. 735, 736, 148 A.2d 259 (1959).[12]

The judgment is vacated and case is remanded with direction to order the parties to proceed to arbitration.

In this opinion the other justices concurred.

---

fits, we need not address Gaudet's claim that the trial court improperly imposed upon him the burden of proving that he was not a converter. We observe, however, that as a general rule affirmative defenses impose the burden of proof upon the party claiming the benefit of the defense, in this case, the insurer. Our holding in *Pawlinski* v. *Allstate Ins. Co.,* 165 Conn. 1, 7, 327 A.2d 583 (1973), recognized that general rule, but made an exception for insurance cases in which the insurer, as required by our decision in *Harty* v. *Eagle Indemnity Co.,* 108 Conn. 563, 565, 143 A. 847 (1928), affirmatively pleaded the claimant's nonfulfillment of conditions precedent to coverage. *Pawlinski* v. *Allstate Ins. Co.,* supra, 8–9.

[12] We note, moreover, notwithstanding counsel's representations to the contrary, that the issue was never raised before the trial court and therefore is not properly before us in any event. *Todd* v. *Glines,* 217 Conn. 1, 3 n.2, 583 A.2d 1287 (1991); *Farrell* v. *St. Vincent's Hospital,* 203 Conn. 554, 567–68, 525 A.2d 954 (1987); see also Practice Book § 4185.