[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
On October 24, 2001, Gerald Office, the plaintiff, filed suit against iEDI Group, Inc. (iEDI), Brenda Toren, Next Generation Ventures, LLC (Next Generation) and Thomas Conroy, the defendants. The plaintiff alleges in his complaint that he was once the chief operations executive of iEDI but was wrongly fired from his position.
On February 26, 2002, the defendants filed a motion to stay pending arbitration. They attached a signed copy of the employment agreement (agreement) made between iEDI and the plaintiff.
The present motion is brought pursuant to General Statutes §52-409.[1] "Under § 52-409, when an action is brought in the trial court by a party to a written agreement that includes provisions for arbitration, and the trial court is satisfied that an issue involved in the action is arbitrable, the court, on motion of any party to the agreement, shall stay the action until arbitration has been had in compliance with the agreement. . . . As a condition precedent to the issuance of a stay order by the trial court, the moving party must be ready and willing to proceed with arbitration. The authority of the court to stay a pending action under § 52-409 thus provides an incentive to participate to the party reluctant to engage in arbitration. On the other hand, the trial courts denial of a § 52-409 motion leaves the parties where the court found them, requiring them to proceed with the pending litigation." (Citation omitted.) Success Centers, Inc. v. HuntingtonLearning Centers, Inc., 223 Conn. 761, 767-68, 613 A.2d 1320 (1992). Moreover, arbitration is favored in Connecticut. "[T]he law in this state takes a strongly affirmative view of consensual arbitration. . . . Early in our judicial history we expressed the view that, since arbitration is designed to prevent litigation, it commands much favor from the law. . . . We have recognized the public policy favoring arbitration which is intended to avoid the formalities, delay, expense and vexation of ordinary litigation." (Citations omitted; internal quotation marks omitted.) Board of Education v. East Haven Education Assn., CT Page 1184066 Conn. App. 202, 207, 784 A.2d 958 (2001).
No party contests that the motion should be granted as to iEDI. According to the signed copy of the contract, iEDI is a party to the contract.[2] The plaintiff, however, argues that Toren, Next Generation and Conroy are not subject to the arbitration clause because they are not parties to the agreement.
 I
The defendants argue that Conroy and Toren are parties to the contract for purposes of arbitration. The term "party" is not defined in §52-409, nor have the appellate courts of Connecticut defined the term. The Supreme Court, however, has looked at General Statutes §52-410[3] and interpreted the meaning of the term "party" in that statute. "In Paranko v. State, 200 Conn. 51, 54, 509 A.2d 508 (1986), we observed . . . that while § 52-410 limits the availability of the remedy to `parties' . . . the word is not defined. We concluded that [t]he term is used generically so that its meaning must therefore be derived from the agreement itself." (Internal quotation marks omitted.)Gaudet v. Safeco Ins. Co., 219 Conn. 391, 396-97, 593 A.2d 1362
(1991).[4]
The contract in the present case gave the board of directors rights over the plaintiff while he was employed at iEDI. The agreement allowed the board to determine whether the plaintiff had engaged in activity that caused a material adverse effect upon iEDI as a reason to terminate the employment. The board also was required to give the plaintiff written notice of a breach of contract if he breached the agreement. Finally, the board was to notify the plaintiff if he violated iEDI's written policies. Notification was a step in terminating the plaintiffs employment. Moreover, the plaintiffs position at iEDI was subject to the "control and discretion" of the board of directors. These factors are especially important in the present case when the plaintiff is alleging that he was wrongfully terminated.
In Paranko, the Supreme Court held that union members were "parties" under § 52-410. It held that the defendant "ignores the important role of the individual employees in labor negotiations and oversimplifies the nature of the collective bargaining process. Employees may not take part individually in negotiating the collective bargaining agreement, the actual negotiations being conducted by their agent, the union. . . . The employees' interests are, however, represented by the agreement signed by the union on their behalf, and the agreement will often grant them the right individually to enforce certain provisions of the contract. They CT Page 11841 are in a broad sense, therefore, `parties' to the agreement." (Citation omitted.) Paranko v. State, 200 Conn. 51, 55, 509 A.2d 508 (1986).Gaudet, an uninsured motorist case, held that "[w]e construe the word `party' within § 52-410 to refer to anyone on whom the agreement confers enforcement rights." Gaudet v. Safeco Ins. Co., supra,219 Conn. 397.
The board of directors had enforcement rights in the present case. For many decisions, it is impossible for iEDI to operate without the board. Although iEDI was the only technical signatory to the agreement, in the real world, a corporation functions through a board of directors. Chancev. Norwalk Fast Oil, Inc., 55 Conn. App. 272, 279, 739 A.2d 1275, cert. denied, 251 Conn. 929, 742 A.2d 361 (1999) ("`It is fundamental to the concept of a corporation that its affairs are to be controlled by a board of directors elected by a majority of the stockholders . . .'") Because the agreement refers to the board determining whether the plaintiff breached the agreement and the fundamental nature of the board in a corporation, the court holds that Toren and Conroy, as members of the board of directors, fit within the definition of "party" in §52-409.[5] A superior court reached the same result in Dodsworth v.Bridgeport Transit District, Superior Court, judicial district of Fairfield at Bridgeport, Docket No. CV 99 0362734 (May 10, 2000, Moran,J.)
The plaintiff argues that the agreement itself limits the arbitration clause to the plaintiff and iEDI. It is true that the arbitration clause states that "[i]n the event that any dispute should arise between theparties hereto . . . such dispute shall be settled by arbitration. . . ." (Emphasis added.) However, the plaintiff misinterpreted the agreement. "Unless the agreement indicates otherwise, [an applicable] statute existing at the time an agreement is executed becomes a part of it and must be read into it just as if an express provision to that effect were inserted therein." (Internal quotation marks omitted.) Fahey v. SafecoIns. Co. of America, 49 Conn. App. 306, 318, 714 A.2d 686 (1998). Nothing in the agreement indicates that § 52-409 would be ignored or that the agreement's arbitration provision should be interpreted differently. Moreover, the agreement specifically provides in section 11 that the agreement "shall be construed and enforced in accordance with the laws of the State of Connecticut. . . ." Accordingly, the term "parties" in the agreement conforms to the broad definition of "party" in § 52-409.
 II
The other entity that the defendants argue is subject to arbitration is Next Generation. The complaint alleges that Next Generation is a major CT Page 11842 stockholder of iEDI and also that Conroy was Next Generation's agent. The defendants argue that Next Generation is subject to the arbitration agreement for those reasons.
"[Consensual a]rbitration is a creature of contract and there must be an express agreement to arbitrate in order for the arbitrators to have authority and the court to have jurisdiction. . . . [A] person can be compelled to arbitrate a dispute only if, to the extent that, and in the manner which, he has agreed to do so. . . . No one can be forced to arbitrate a contract dispute who has not previously agreed to do so. . . . Therefore, [t]he authority for arbitration must be derived from the agreement of the parties . . . and the relevant provisions of applicable statutory directives. . . ." (Citations omitted; internal quotation marks omitted.) Lussier v. Spinnato, 69 Conn. App. 136, 142-43, 794 A.2d 1008, cert. denied, 261 Conn. 910, ___ A.2d ___ (2002). As previously stated, the court looks to the agreement to determine if Next Generation is a party to the agreement.
Next Generation is not subject to the arbitration clause. Next Generation was a shareholder of iEDI that allegedly employed Conroy as an agent. Nothing in the file suggests that Next Generation was a third party beneficiary to the agreement or had enforcement rights by the agreement.
The defendants argue that Next Generation should be bound by arbitration because it controlled a board member, Conroy. This argument ignores the fact that a court should look to the agreement to determine whether the party agreed to arbitration. Nothing within the agreement points to those who control the board members nor does it confer enforcement rights on shareholders. Moreover, there is no allegation that Next Generation was a board member. The complaint only alleges that Next Generation controlled a board member. Accordingly, the court refuses to stay the proceedings.[6]
 III
As for the iEDI, Toren and Conroy, the court must determine whether the issues raised in the present case are arbitrable issues. The arbitration clause is broadly worded, stating that "any dispute" as to the "validity of this Agreement or as to the construction, enforcement or Performance of this Agreement" "shall" be subject to arbitration.
The plaintiff brought a seven count complaint. He has alleged breach of contract in the first count, a violation of the Connecticut Unfair Trade Practices Act in the second count, fraud in the third count, tortious CT Page 11843 interference in the fourth count, breach of fiduciary duties in the fifth count, wrongful termination in the sixth count and conversion of his stock options in the seventh count. The gravamen of the seven counts is that the defendants improperly induced the plaintiff to become iEDI's chief operations executive and then improperly terminated his employment. The plaintiff alleges a dispute regarding the performance of the agreement.
Moreover, the plaintiff has not argued that the issues in the present case are not arbitrable. The court finds that the issues in the present case are arbitrable.
 CONCLUSION
For the reasons stated herein, the court grants the motion to stay as to iEDI, Conroy and Toren. The court denies the motion as to Next Generation.[7]
 ___________________ Booth, J.