[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
In this action, plaintiff Debra M. Fisette, Rocky Hill zoning enforcement officer, seeks an injunction prohibiting defendant from violating Rocky Hill zoning regulations and for civil penalties, attorney's fees and other relief. This court CT Page 6411 (O'Neill, J.), after a hearing, issued a temporary injunction, and after a further hearing, found defendant in contempt for violating the temporary injunction, fined and ordered him to pay attorney's and sheriff's fees. Defendant has appealed the contempt order, and moved this court to stay the contempt order and to dissolve the temporary injunction. This court agreed to hear defendant's motions, the case on its merits as to the plaintiff's claim for a permanent injunction and other relief, and as to defendant's special defense.
The plaintiff's amended complaint alleges defendant violated Sections 3.47 and 9.42c of the Rocky Hill zoning regulations (hereinafter regulations).
Section 3.47 reads as follows:
 3.47 Display or storage of materials. In all zones, the display, exhibition or storage of merchandise, materials or articles for sale in the required front yard shall be prohibited and the storage of such materials behind the building line shall be covered or screened from the street.
Section 9.42c reads as follows:
 9.42 Required Submission — . . . The submission of a site plan in accordance with these regulations shall also be required whenever any of the following conditions exist:
 c. A change in use of the existing building and or land use. . .shall reduce or modify . . . parking layout.
1. Claimed violation of 3.47
The facts relating to this alleged violation are as follows; Defendant is the owner of land and buildings at 914 Cromwell Avenue, Rocky Hill where since 1977 DiPietro-Kay Corporation, of which he is a principal, has operated a business of repairing and selling engines, engine parts and boats. In 1984, defendant submitted a site plan and application for building permit to the Rocky Hill Planning and Zoning Commission (hereinafter commission) for an addition to his structure. The town zoning enforcement officer and the building official inspected defendant's property and found some boats temporarily stored outside. The commission approved CT Page 6412 defendant's site plan without making any ruling as to outdoor storage.
In the latter part of 1988, defendant filed another site plan application. As part of the approval process, on February 13, 1989 the zoning enforcement officer and town planner inspected defendant's premises. They found outside of the building, not covered or screened, wood pallets, miscellaneous materials, and fifty to sixty boats. The next day the zoning enforcement officer issued a cease and desist letter to defendant, citing violation of 3.47 and ordering him to remove all items stored outside. Defendant never appealed that order to the Rocky Hill zoning board of appeals. Defendant withdrew his application in April 1989.
In June 1989, defendant applied for a variance from 3.47 of the regulations relating to outside storage on his site. The Rocky Hill zoning board of appeals denied the application in July 1989.
In July 1989, defendant again applied for site plan approval and permission to build a building in the front of the site. In response to the application, the town planner again inspected the site and observed boats, boat trailers, various merchandise and materials stored and displayed throughout the premises. In August, defendant withdrew his site plan submission.
In October 1989, the zoning enforcement officer and town planner again inspected the site and observed boats on the private road from Cromwell Avenue to defendant's property; boats and a boat crane in the front yard of the site; boats, wood pallets and miscellaneous junk outside of buildings throughout the site. None of these items were screened from the street.
In September 1989, plaintiff served on defendant and filed in court an application for order to show cause and for temporary injunction, and a complaint, acknowledged by Thomas P. Rust (then the zoning enforcement officer) but not verified under oath by him. After a hearing Judge O'Neill issued a temporary injunction ordering that defendant not store boats and other items in the front yard of the premises and other specified locations of the premises. Thereafter the zoning enforcement officer and town planner inspected the site at least five times in late 1989 and 1990 and found the defendant had stored boats and other items in places prohibited by Judge O'Neill's order. Based on their testimony, Judge O'Neill found in contempt and fined defendant. Defendant has appealed that contempt order and here seeks a stay of the order. CT Page 6413
General Statutes Section 8-12 authorizes town zoning enforcement officers to initiate actions in the superior court to enforce local zoning regulations and to obtain injunctions prohibiting violations of these regulations. The plaintiff need not "show irreparable harm or unavailability of an adequate remedy at law before obtaining an injunction; rather all that must be shown is a violation of the ordinance." Johnson v. Murzyn, 1 Conn. App. 176, 180, cert. den. 192 Conn. 802
(1984). The rule is cited with approval in Conservation Commission v. Price, 193 Conn. 414, 429 (1984).
Section 3.47 of the regulations has two distinct parts. The first clause prohibits "the display, exhibition or storage of merchandise, materials or articles for sale in the required front yard."
In the "RC" zone in which defendant's property is located, a front yard is forty-five feet in depth. Since defendant's property is on a private road, known a DiPietro Road, running from Cromwell Avenue, its front yard is not readily ascertainable, but based on the testimony of the zoning enforcement officer, the court determines it to be a forty-five foot area beginning at DiPietro Road and extending south the width of the lot, bordering Benedict Door property. In that area the testimony revealed and the court finds the display for sale and storage of numerous boats and boat trailers and that the situation existed for several months in 1989 and 1990.
The second clause of 3.47 requires that "the storage of such materials behind the building line shall be covered or screened from the street."
In her brief, plaintiff asks this court to read that portion of 3.47 in conjunction with 6.3d of the regulations which provides: "No outdoor storage shall be permitted except behind an opaque fence six feet high." This section differs from 3.47 in two particulars: (1) 6.3d requires that outdoor storage be behind an opaque fence, rather than covered or screened as in 3.47; (2) 6.3d requires that outdoor storage be protected from the view of everyone, rather than screened from the street as in 3.47. These differences are significant. Plaintiff did not allege, even in her amended complaint, approved at the start of the trial, that defendant violated 6.3d, nor is there reference to 6.3d in plaintiff's cease and desist order. Since under our law the defendant is entitled to rely on the complaint to state the issues to be tried (Farrell v. St. Vincent Hospital, 203 Conn. 554, 557
(1987), fairness requires that 6.3d not be considered by this court. CT Page 6414
Under 3.47 plaintiff has the burden of proving that the storage on defendant's property was not covered or screened from the street. In the zoning regulation "street" is defined as a public thoroughfare (1) which has been accepted as a town street, (2) the layout of which has been approved by the commission or (3) which is maintained by the town.
Defendant's property borders Interstate Highway I-91. That highway does not meet any of the criteria of a street within the definition of the regulations. The property can be seen from Cromwell Avenue. That is a state highway (Route 3) so it is not an accepted town street or maintained by the town. However, the town planner testified that from her examination of town records, she concluded the town had approved the layout of all streets in the town, including Cromwell Avenue. Sections of Cromwell Avenue were approved by the commission and the board of selectmen in 1958, which also led her to believe that all sections of the avenue were similarly approved. Based on this testimony, the court concludes Cromwell Avenue is a street within the meaning of the regulations.
The evidence clearly established the storage of boats and boat trailers for sale, wood pallets and miscellaneous junk behind the building line, all outside and not covered or screened from Cromwell Avenue.
Defendant, however, has raised a number of defense which must be considered by this court before finding a violation of 3.47.
The first defense asserted by defendant in his brief is to invoke 1.5 of the zoning regulations which provides that any valid site plan approval or certificate of zoning compliance issued before the 1988 regulations became effective "shall be unaffected by the provisions of these Regulations." Defendant claims he obtained a site plan approval and certificate of zoning compliance in 1984 and therefore his property cannot be subject to 3.47 of the 1988 regulations.
The difficulty with the defense is that defendant never pled it in any of the special defenses of his answer. Just as this court has refused to consider 6.3d in connection with plaintiff's case, it also refuses to consider 1.5 in connection with defendant's defense.
Moreover, defendant's interpretation of 1.5 is faulty. That section means that while a property owner is subject to site plan requirements at the time he applies and obtains CT Page 6415 approval, his subsequent continued use of the property is subject to current regulations, except as to nonconforming uses which will be considered intra.
Furthermore, the site plan approval defendant obtained in 1984 related to the construction of a new building on his premises. It did not approve outdoor storage. When in 1989 defendant applied for a variance from 3.47 for outside storage on his site, the zoning board of appeals turned him down. Consequently, even on its merits 1.5 does not help defendant.
Defendant next asserts that this court had no jurisdiction to hear this case because plaintiff's application for temporary injunction was not made under oath. Section52-47 (b) of Conn. Gen. Stats. provides, "No injunction may be issued unless the facts stated in the application are verified by the oath of the plaintiff for of some competent witness."
In this case, Thomas P. Rust, the plaintiff who initiated the action, verified to the truth of the complaint but his acknowledgement before an attorney only acknowledged he executed the complaint "for the purposes therein contained." However, he testified at trial that he swore to the truth of the complaint at the time he signed the verification. Thus the complaint was verified by oath of the plaintiff, as required by52-471 (b). Moreover, Judge O'Neill issued the temporary injunction only after hearing the sworn testimony of several witnesses. In this trial for a permanent injunction, the merits were fully explored, and at this stage of the case the formal requirement of 52-471 (b) do not apply. (Gardis v. Bloethe, 39 Conn. Sup. 53, 55-56 (1983).
Defendant next asserts the commission acted without jurisdiction in approving the 1988 revision of the zoning regulations, which contain 3.47, because it failed to file a copy of the draft zoning map in the town clerk's office as required by Conn. Gen. Stats. 8-3 (a). That statute does required that a copy of proposed regulations and boundary may be filed in the town clerk's office for public inspection at least ten days before the public hearing on such proposals. Failure to so file is a jurisdictional defect. Bombero v. Planning and Zoning Commission of Monroe, 17 Conn. App. 150 (1988).
The defendant has the burden of proving his defense of violation of 8-3 (a). Scovil v. Planning and Zoning Commission155 Conn. 12, 17 (1967). Here the evidence clearly established that the text of the proposed regulations were filed in the Rocky Hill town clerk's office on June 27, 1988 for the August 2, 1988 public hearing. The revised map was not filed at that time because it was not then ready. When this case was CT Page 6416 initiated, the map was found on file in the town clerk's office, confirming the presumption that the zoning officials "acted in accordance with the law and that the regulations [and maps] were properly kept on file in the town clerk's office, available for public inspection, until sometimes after the public hearing." id, p. 19. Although the map was not time stamped, the town clerk testified that was not unusual for planning and zoning commission documents. Most persuasive was the testimony of former town planner, Thomas Hooper, that he picked up the map at the consultant's office and filed it with the town clerk at least ten days in advance of the August 2, 1988 hearing date. Thus, this court concludes the defendant failed to prove the town did not comply with 8-3 (a).
The defendant next asserts the commission lacked jurisdiction to approve the 1988 revision of the regulations, which contain 3.47, because it failed to publish notice of the public hearing in a newspaper having a substantial circulation in Rocky Hill, as required by 8-3 (a).
That statute does require that notice of time and place of a public hearing on a change of zoning regulations and districts "shall he published in the form of a legal advertisement in a newspaper having a substantial circulation" in the town. The word "shall" connotes a mandatory requirement.
The notice in this case was published in the New Britain herald. The evidence was that that paper has a paid circulation of 15.79% of the 6500 occupied households of Rocky Hill, and 16% when rack and counter sales are included. The evidence also was that the Herald indexes Rocky Hill news on the front page, reports the commission meetings in the Rocky Hill news, and prints the public notices on the same page. The probability of those notices being seen and read is much greater than if printed in the classified advertisement section of the paper.
There is no question the Herald is a newspaper, which is defined as a paper printed and distributed at regular and short intervals, containing news, editorials, features, advertisements and other matters of current interest. Caldor v. Heffernan, 183 Conn. 566, 521 (1981). The issue is whether circulation of 16% in the town is "substantial" within the meaning of 8-3 (a). No Connecticut cases deal with the issue and no legislative history of 8-3 (a) is available. Other statutes require publication in newspapers of "substantial circulation" (1-2), "general circulation" (8-29; 9-226) and simply "circulation" (7-15 (a)).
The purpose of such requirements is to provide adequate CT Page 6417 notice to the public at large of the meetings of actions of public agencies. Common sense must inform a judgment of what is adequate. Here this court concludes that a 16% circulation in Rocky Hill is substantial within the meaning of 8-3a). The court is particularly strengthened in this conclusion by the manner the Herald indexes and places the public notice on the pages of Rocky Hill news.
Defendant next asserts the commission's failure to give him actual notice of the 1988 proposed zone change of his property from commercial to restricted commercial denied him due process under the fourteenth amendment of the United States constitution. The evidence was that the zone change restricted the uses of defendant's property and reduced its value. But this case is not about the application of the zone change to the defendant. It is about 3.47 which imposes restrictions or front yard storage and on outdoor, unscreened storage behind the building line "In all zones." Therefore, for purposes of this case, it is irrelevant that defendant's property was rezoned to restricted commercial. Moreover, the 3.47 limitations are not so onerous as to invoke a constitutional protection. Furthermore, since 3.47 applies to all Rocky Hill property owners, newspaper notice is appropriate and defendant is not entitled to actual, personal notice. Double I Limited Partnership v. Glastonbury Planning Zoning Commission,4 C.S.C.R. 774, 15 C.L.T. 44 (Nov. 6, 1989); Jarvis Acres, Inc. v. Zoning Commission, 163 Conn. 41, 47 (1972); Balt [Balf] Company v. Town of East Granby, 152 Conn. 319, 325 (1965).
Finally, defendant asserts that he stored boats on his premises before the adoption of 3.47 in the 1988 regulations so that storage now is a permissible nonconforming use. Section 3.27(a) of the 1988 regulations provide "any non-conforming use, building or structure existing as of the effective date of the adoption of these Regulations. . .shall be permitted to continue notwithstanding any other provisions of these Regulations. . . ."
The court finds that while there was evidence of a few boats temporarily on defendant's property before 1988, there was no evidence they were stored there in the way found by town officials in 1989 and 1990. More significantly a use prior to enactment of a regulation must be a legal use before it can become a valid nonconforming use after enactment. Bianco v. Darien, 157 Conn. 548, 558 (1969). Section 5.3(b)4 of the 1974 regulations provided "No outdoor storage shall be permitted except behind an opaque fence six feet high." Defendant clearly had no opaque fence hiding what boats he had on the property before 1988. CT Page 6418
That section also provided the requirement could be "waived by the Commission in the case of the display of new or used merchandise for sale at retail in accordance with an approved site plan." Defendant argues the commission waived the requirement by its employees observing boats on his premises and not citing him for violation. The regulation does not provide for waiver by implication but rather "in accordance with an approved site plan." The commission's approval in 1984 of a new building on defendant's property did not expressly waive the prohibition of outdoor storage under 5.3(b) 4. Thus, defendant's use prior to 1988 was not legal and could not after 1988 create a valid nonconforming use.
Moreover, the defendant did not appeal the zoning enforcement officers cease and desist order to the zoning board of appeals which could have determined whether defendant had a valid nonconforming use. His failure to exhaust his administrative remedy justifies this court declining to consider that defense. Town of Greenwich v. Kristoff,180 Conn. 575 (1980).
All of defendant's defenses being without merit, this court concludes defendant violated 3.47 by displaying storing boats, boat trailers and other merchandise for sale in his front yard and behind the building line, unscreened from Cromwell Avenue.
2. Claimed violating 9.42c:
Section 9.42c requires the submission of a site plan for any change in parking layout on property. Without submitting a site plan to the commission, defendant constructed a parking area by excavating ground, removing grass and laying down a substantial quality of processed riprapped stone. This was a violation of 9.42c.
Defendant's only excuse for not complying with that section was that he misunderstood Judge O'Neill's order about parking cars on DiPietro Drive and created the parking area as an emergency alternative. That is no excuse at all.
 3. Plaintiff's claim for civil penalties, attorneys fees and costs:
Section 8-12 provides that a person who fails to comply with a zoning enforcement officer's cease and desist order within ten days shall be subject to a civil penalty not to exceed $2500, and if the court finds the violation wilful, it shall allow the municipality its costs and reasonable attorneys fees. CT Page 6419
The facts in this case are not egregious. Defendant's property is located on a private road behind a restaurant and gas station on Cromwell Avenue and at a grade below the level of that street. Although outdoor stored boats can be seen from the street, they do not present an eyesore. Moreover, to legal issues in this case are difficult and there are strong arguments on both sides. The court does not find defendant's violation to be so willful as to justify imposition of civil penalties or attorney's fees. The plaintiff is, however, entitled to court costs.
4. Remedy:
The defendant is herewith enjoined from and ordered:
1. To remove all boats, boat trailers and other merchandise for sale from his front yard, defined as a forty-five foot wide area beginning at DiPietro Road extending south the width of the lot, bordering Benedict Door property, and to cease and desist from storing such boats, boat trailers and other merchandise in that area, in violation of 3.47 of the regulations.
2. To remove all boats, boat trailers and other merchandise for sale from behind the building line of his property unless they shall be screened or covered from Cromwell Avenue, and to cease and desist from storing such merchandise in that area, in violation of 3.47 of the regulations. If this area is not adequately defined, this court retains jurisdiction, on the motion of either party, to hear the issue and to specify with more precision the area from which merchandise is barred.
3. To remove the processed stone, riprapped parking area on the southeast portion of DiPietro Drive and to cease and desist from using the parking area, in violation of 9.42(c) of the regulations.
Defendant's motion to dissolve the temporary in junction and to stay the contempt order, except to the extent his appeal operates as a stay, are denied.
Judgment may enter for the plaintiff accordingly, with costs.
ROBERT SATTER, STATE TRIAL REFEREE