## COURTNEY LANE *v.* AETNA CASUALTY AND SURETY COMPANY
### (12824)

PETERS, C. J., DANNEHY, SANTANIELLO, CALLAHAN and F. HENNESSY, Js.

Argued January 13—decision released April 21, 1987

*William F. Gallagher*, with whom, on the brief, were *Robert C. Mirto* and *Evelyn A. Barnum*, for the appellant (plaintiff).

*Randolph E. Richardson II*, with whom, on the brief, was *John V. Griffin, Jr.*, for the appellee (defendant).

DANNEHY, J. The dispositive issue in this appeal is whether the plaintiff's failure to exhaust the liability coverage of a tortfeasor is a coverage issue to be decided by arbitration, or is a threshold issue to be decided by the court. The undisputed facts of the case indicate that the plaintiff, Courtney Lane, was injured in an automobile collision that occurred on April 9,

1983, while she was a passenger in a vehicle which was parked in the driveway of her home (plaintiff's vehicle). The vehicle which struck the plaintiff's vehicle was owned by Stephen Esposito and was operated at the time of the collision by Mark Esposito. Two other persons seated in the plaintiff's vehicle were also injured in the collision. Both vehicles were insured by Aetna Casualty and Surety Company, the defendant in this action.

The Esposito policy afforded total liability coverage of $100,000 to the three persons injured in the accident. The plaintiff received $43,000 in settlement of her claim, and an additional $47,000 was received by the other injured persons for a total settlement of $90,000. In addition, property damage claims were settled for $7353.61, leaving a balance of $2646.39 unpaid under the Esposito policy.

After the third party settlement, the plaintiff asserted a claim for payment and demanded arbitration pursuant to the underinsured motorist provision of the policy held by her father, James A. Lane (Lane policy), with the defendant. The Lane policy provides that the insurer "will pay damages which a covered person is legally entitled to recover from the owner or operator of an uninsured motor vehicle because of bodily injury: (1) sustained by a covered person; and (2) caused by an accident." The plaintiff is a "covered person" under the policy, and an underinsured motor vehicle is included in the definition of an "uninsured motor vehicle" in the policy. The policy provides liability coverage for two vehicles of $500,000 per accident and underinsured motor vehicle coverage of $40,000 per accident. With stacking, the total amount of underinsurance coverage is $80,000.

An amendment to the policy's uninsured motorist coverage provisions states that the insurer "will pay

under this coverage only after the limits of liability of any applicable bodily injury liability bonds or policies have been exhausted by payment of judgments or settlements." Similar "exhaustion" language is found in General Statutes § 38-175c (b) (1).[1] Another amendment to the policy provides that "any insurance we provide with respect to a vehicle you do not own, to which other similar insurance is applicable, shall be excess over such other applicable insurance." Finally, the policy contains an arbitration provision which provides that if the insurer and a covered person disagree: "1. Whether that person is legally entitled to recover damages from the owner or operator of an uninsured motor vehicle; or 2. On the amount of damages; The covered person may make a written demand for arbitration . . . ."

Pursuant to the arbitration provision, the plaintiff applied for an order to proceed with arbitration, and a hearing on the application was held before a state trial referee in July, 1985. At the hearing, the plaintiff maintained that an arbitrable question existed as to whether she should receive payment under the uninsured motorist coverage of the policy even though there was $2646.39 remaining under the Esposito policy. She argued that her claims and those of the others injured in the same accident were worth well over $100,000 but that the defendant, as insurer under the Esposito policy, had refused to settle the claims for the full $100,000 limit of the Esposito policy. According to the

[1] "[General Statutes (Rev. to 1985)] Sec. 38-175c. UNINSURED MOTORIST COVERAGE. . . . (b) (1) An insurance company shall be obligated to make payment to its insured up to the limits of the policy's uninsured motorist coverage after the limits of liability under all bodily injury liability bonds or insurance policies applicable at the time of the accident have been exhausted by payment of judgments or settlements, but in no event shall the total amount of recovery from all policies, including any amount recovered under the insured's uninsured motorist coverage, exceed the limits of the insured's uninsured motorist coverage."

plaintiff, the defendant withheld a small portion of the monies available under the Esposito policy in order to discourage the parties from pursuing their liability claims at trial. In this way the defendant might also defeat a claim for underinsured motorist coverage under the Lane policy by arguing that the Esposito policy had not been exhausted. The defendant's response to these allegations was simply that the exhaustion language of General Statutes § 38-175c (b) (1) had not been satisfied and therefore the plaintiff was precluded from attempting to compel arbitration of her underinsured motorist claim.

The court denied the plaintiff's application to proceed with arbitration, ruling first that the question of whether the plaintiff could compel arbitration when there still was $2646.39 remaining under the Esposito policy was a threshold question for the court to decide. The court then decided the merits of the question in the defendant's favor. In an articulation filed in May, 1986, the court stated that "the plaintiff's failure to exhaust the underlying automobile liability coverage precluded her from attempting to compel the defendant to submit to arbitration of the underinsured motorist coverage claim." The court also noted that the appropriate action to assert a claim that the defendant had negotiated in bad faith would be a suit for fraud rather than an action to compel arbitration.

It is from the denial of her application to proceed with arbitration that the plaintiff appeals. She maintains that the court erred: (1) in holding that her failure to exhaust the liability coverage of the tortfeasor was not a coverage issue to be decided by arbitration; (2) in ruling that the underinsured benefits were not available to her because of the money remaining under the Esposito policy; and (3) in refusing to find that the underinsured motorist provision in the Lane policy which required exhaustion of the liability limits of the tortfeasor is void

as contrary to public policy. We agree with the plaintiff that the question of whether the $2646.39 remaining under the Esposito policy precludes the plaintiff from attempting to collect under the underinsured motorist provision of the Lane policy, is essentially a question of coverage which must be submitted to arbitration. Because of this holding, we need not consider the plaintiff's two remaining claims.

The arbitrability of a particular dispute is a question for the court to decide. The duty to arbitrate, however, may be created by contract or by statute. *Security Ins. Co. of Hartford* v. *DeLaurentis*, 202 Conn. 178, 182–83, 520 A.2d 202 (1987); *W. J. Megin, Inc.* v. *State,* 181 Conn. 47, 49, 434 A.2d 306 (1980). Unless a statute provides otherwise, "[t]he answer to the question whether or not the court shall direct a party to proceed with arbitration is embodied in the insurance contract." *Visselli* v. *American Fidelity Co.,* 155 Conn. 622, 624, 237 A.2d 561 (1967).

The insurance policy involved in the present appeal states that a demand for arbitration may be made if there is a disagreement concerning (1) whether the covered person is legally entitled to recover damages from the owner or operator of an uninsured motor vehicle, or (2) the amount of damages. The question involved in the present appeal does not appear to fall into either of these categories. General Statutes § 38-175c (a) (1), however, provides that every policy "issued on or after October 1, 1971, which contains a provision for binding arbitration shall include a provision for final determination of insurance coverage in such arbitration proceeding."[2] This language, which was added to

---

[2] "[General Statutes (Rev. to 1985)] Sec. 38-175c. UNINSURED MOTORIST COVERAGE. (a) (1) Every such policy shall provide insurance, herein called uninsured motorist coverage, in accordance with such regulations, with limits for bodily injury or death not less than those specified in subsection (a) of section 14-112, for the protection of persons insured thereunder who

§ 38-175c (a) in 1979, legislatively overruled our holding in *Frager* v. *Pennsylvania General Ins. Co.,* 155 Conn. 270, 231 A.2d 531 (1967), that an insurer could contractually limit the uninsured motorist issues to be decided by arbitration and thus exclude coverage questions. See *Wilson* v. *Security Ins. Group,* 199 Conn. 618, 623, 509 A.2d 467 (1986). The intent and effect of the quoted language of § 38-175c (a) (1) "is to remove from the court and to transfer to the arbitration panel the function of determining, in the first instance, *all issues as to coverage* under automobile liability insurance policies containing uninsured motorist clauses providing for arbitration." (Emphasis added.) *Oliva* v. *Aetna Casualty & Surety Co.,* 181 Conn. 37, 42, 434 A.2d 304 (1980).

Our prior decisions make clear that because of the language of § 38-175c (a) (1), policies like the one at issue here which do not expressly provide for the resolution of coverage disputes by arbitration must nonethe-

are legally entitled to recover damages from owners or operators of uninsured motor vehicles and underinsured motor vehicles and insured motor vehicles, the insurer of which becomes insolvent prior to payment of such damages, because of bodily injury, including death resulting therefrom, provided each insurer licensed to write automobile liability insurance in this state shall provide such uninsured motorists coverage with limits requested by the named insured upon payment of the appropriate premium, but such insurer shall not be required to provide such coverage with limits in excess of the limits of the bodily injury coverage of such policy issued to such named insured. No insurer shall be required to provide uninsured motorist coverage to (A) a named insured or relatives residing in his household when occupying, or struck as a pedestrian by, an uninsured or underinsured motor vehicle or a motorcycle that is owned by the named insured, or (B) to any insured occupying an uninsured or underinsured motor vehicle owned by such insured. Every such policy issued on or after October 1, 1971, which contains a provision for binding arbitration shall include a provision for final determination of insurance coverage in such arbitration proceeding. With respect to any claim submitted to arbitration on or after October 1, 1983, the arbitration proceeding shall be conducted by a single arbitrator if the amount in demand is forty thousand dollars or less or by a panel of three arbitrators if the amount in demand is more than forty thousand dollars."

less be construed to include such a provision. See *Wilson* v. *Security Ins. Group,* supra; *Oliva* v. *Aetna Casualty & Surety Co.,* supra, 41–42. If the question of whether the plaintiff should receive payment under the uninsured motorist provision of the Lane policy even though $2646.39 remains under the Esposito policy is one of *coverage,* then such a question should not have been decided by the court but instead should have been submitted to arbitration.

In determining whether the question presented here involves a coverage dispute, we look for guidance to several previous decisions of this court which interpret the scope of § 38-175c. We recently concluded that the issue of whether a policy's uninsured motorist coverage provision extended benefits to accidents involving underinsured vehicles was essentially a coverage question. *Security Ins. Co. of Hartford* v. *DeLaurentis,* supra, 188. Similarly, in *Wilson* v. *Security Ins. Group,* supra, 623–24, we held that questions involving whether fleet policies could be stacked and whether uninsured motorist benefits should be set off by the amount of workers' compensation benefits collected were ones of coverage. More importantly, in a case factually similar to the present one, we determined that the question of whether the nonfulfillment of a policy provision concerning the timely presentation of claims bars recovery, was essentially one of coverage. *Oliva* v. *Aetna Casualty & Surety Co.,* supra, 41.

The defendant maintains that the present case differs from prior cases like *Oliva* and its progeny, in that the question in those cases dealt with the policy itself and not with statutory language. See, e.g., *Carroll* v. *Aetna Casualty & Surety Co.,* 189 Conn. 16, 453 A.2d 1158 (1983). According to the defendant, therefore, those cases did not present threshold issues of law for decision before requiring arbitration but instead involved matters to be considered by the arbitrator. In the

present case, however, the defendant contends that the language of § 38-175c (b) (1) which provides that uninsured motorist coverage is available only after the limits of the tortfeasor's liability coverage "have been exhausted by payment of judgments or settlements," sets forth an absolute statutory prerequisite to arbitration.

The weakness of this argument is that the exhaustion language embodied in § 38-175c (b) (1) has been incorporated into the Lane policy and therefore the issue presented involves interpreting both statutory and policy language. In *Wilson* v. *Security Ins. Group,* supra, we construed the language of § 38-175c (a) (1) providing for final determination of insurance coverage by arbitrators to make "no distinction between coverage issues governed wholly by the policy language and those which may also require the application of statutes or regulations in order to resolve them." We further explained that "[t]he legislative purpose in providing arbitration as an expeditious method of dispute resolution . . . would be thwarted" if arbitrators were required to interpret policy language in one proceeding while the courts determined the effect of a statute in another. Id., 624. A contrary conclusion would contravene our holding in *Oliva* v. *Aetna Casualty & Surety Co.,* supra, 42, that § 38-175c (a) (1) transfers to the arbitration panel "all issues as to coverage" where a policy includes a provision for arbitrating any uninsured claim. We see no reason to depart from the dictates of *Wilson* merely because in the present case the language of the policy essentially tracks the statutory provision.

Recently, in *Beloff* v. *Progressive Casualty Ins. Co.,* 203 Conn. 45, 54, 523 A.2d 477 (1987), we held that the issue of whether motorcycle policies are governed by General Statutes § 38-175a et seq. was a threshold question to be determined by the court and not by arbi-

tration. Our reasoning was that the dispute presented in that appeal concerned whether § 38-175c (a) was applicable to the policies in question; the dispute was not merely about the scope of coverage mandated by that section. *Beloff* v. *Progressive Casualty Ins. Co.,* supra. In the present case, it is not disputed that § 38-175c applies to the policy in question. The defendant in its brief, in fact, relies entirely on the statutory language. It claims that under § 38-175c (a) (1), a party must exhaust underlying liability coverage as a prerequisite to the availability of underinsured motorist coverage benefits. The defendant asserts that because "[u]nder no definition may it be said that coverage provided by the underlying automobile liability policy was exhausted," the trial court's denial of the application for arbitration was proper.

The difficulty with the defendant's position is that it shifts the focus from whether the particular issue presents a coverage question to whether the answer to the question itself will most likely be in the defendant's favor. As we explained in *Security Ins. Co. of Hartford* v. *DeLaurentis,* supra, 187, "[t]he determination of arbitrability is dependent upon the scope of the agreement to arbitrate, not upon the relative strength or weakness of a party's position on the disputed claim." In *Oliva* v. *Aetna Casualty & Surety Co.,* supra, for example, the plaintiff conceded that she had failed to comply with a policy provision concerning notice. Nevertheless, she applied for an order compelling arbitration of her claim for uninsured motorist coverage benefits. The trial court denied the application on the ground that the giving of notice was a condition precedent to arbitration. We found error, explaining that the question of whether nonfulfillment of a policy provision bars recovery is essentially one of coverage. Id., 41.

This reasoning applies with equal force to the present case. The Lane policy conditions the availability of uninsured motorist coverage benefits on the exhaustion of the limits of the tortfeasor's liability policy. Whether the $2646.39 remaining under the Esposito liability policy precludes her from recovering uninsured motorist coverage benefits is, in essence, a question of coverage. The trial court should not have decided the question but should have required the parties to submit it to arbitration. The denial of the plaintiff's application to proceed with arbitration was therefore erroneous.

There is error, the judgment is set aside and the case is remanded with direction to render judgment ordering that the defendant proceed with arbitration.

In this opinion the other justices concurred.