# JOHN D. STEVENS *v.* HARTFORD ACCIDENT AND INDEMNITY COMPANY
## (13337)

Dupont, C. J., and Schaller and Spear, Js.

Argued April 20—decision released September 19, 1995

*Charles J. Goddard*, for the appellant (plaintiff).

*Philip F. von Kuhn*, for the appellee (defendant).

SCHALLER, J. The plaintiff appeals from the judgment of the trial court denying his application to proceed with arbitration. The plaintiff claims that the trial court improperly denied the application by deciding the residency issue (1) when the case should have been submitted to mandatory arbitration for resolution of all coverage issues, including residency, pursuant to General Statutes § 38a-336 (previously § 38-175c), (2) after a mistrial had been declared by a prior trial court following our remand in *Stevens* v. *Hartford Accident & Indemnity Co.*, 29 Conn. App. 378, 615 A.2d 507 (1992), thereby mandating a complete retrial before a trial court or a panel of arbitrators and (3) without giving the parties an adequate opportunity to be heard. We reverse the judgment of the trial court.

The following facts are relevant to our consideration of the plaintiff's claims. On April 11, 1990, the plaintiff sought to compel arbitration on the uninsured motorist insurance policy held by his father on the ground that he was a resident in his father's household. The defendant argued that residency was a question of law and a threshold issue to arbitration and, therefore, needed to be resolved by the court. The plaintiff's position was that residency was a coverage issue and, therefore, arbitrable. The plaintiff, however, agreed to have the court resolve this issue on the merits. Id., 379 n.1. Judge James D. O'Connor held an evidentiary hearing on October 3 and 4, 1990, and reserved decision. Judge O'Connor died without rendering judgment. Judge Arnold W. Aronson found a handwritten, unsigned document

among Judge O'Connor's papers. On the basis of that document, Judge Aronson ruled that the plaintiff was not a resident of his father's household and, therefore, did not have standing to demand arbitration.

The plaintiff appealed Judge Aronson's decision to this court. Id., 378. The plaintiff argued on appeal that Judge Aronson had improperly based his ruling on Judge O'Connor's handwritten, unsigned decision. We agreed with the plaintiff and held that "the handwritten decision by Judge O'Connor, which was neither signed by him nor filed with the clerk, could not be given the force or effect of a judgment of the court." Id., 381. We held, in addition, that "upon the death, disability or resignation of a judge of the Superior Court during the pendency of a trial or hearing to the court, a successor judge should take the following steps pursuant to the authority granted by [General Statutes] § 51-183f: (1) become familiar with the entire existing record, including, but not necessarily limited to, transcripts of all testimony and all documentary evidence previously admitted; (2) determine, on the basis of such record and any further proceedings as the court deems necessary, whether the matter may be completed without prejudice to the parties; (3) if the court finds that the matter may not be completed without prejudice to the parties it should declare a mistrial, but if the court finds that the matter may be completed without prejudice to the parties then; (4) upon request of any party, or upon the court's own request, recall any witness whose testimony is material and disputed and who is available to testify without due burden; (5) take any other steps reasonably necessary to complete the proceedings; and (6) render a decision based on the successor judge's own findings of fact and conclusions of law."[1] Id., 385–86.

---

[1] General Statutes § 51-183f provides in relevant part that "if any judge of the superior court is retired because of disability, dies or resigns during the pendency of any proceeding before him, any other judge of that court, upon

On remand, Judge Aronson reviewed the entire existing record, testimony, and proposed findings of fact submitted by both parties. On March 3, 1993, Judge Aronson issued a memorandum of decision in which he declared a mistrial. Judge Aronson found that because the credibility to be given to the testimony of two witnesses, the plaintiff and his father, was the determining factor, it would be inappropriate to decide the issue of residency without a complete retrial.

The plaintiff then reclaimed the original application to proceed with arbitration dated April 11, 1990, seeking a hearing before a panel of arbitrators as opposed to a retrial before the Superior Court. On April 19, 1993, a hearing was held before the trial court, *O'Neill, J.*, who thereafter reserved decision. Judge O'Neill subsequently issued a memorandum of decision on August 6, 1993, denying the application on the basis of the merits of the issue of residency. The plaintiff filed a motion for reconsideration dated August 13, 1993, and a hearing was held on October 25, 1993. A second hearing was held on February 7, 1994, on the motion for reconsideration. Judge O'Neill denied that motion, stating, in part, that after a judge dies "the successor judge should take the following steps, and [the Appellate Court] gave us a six numbered laundry list—of the things to do, the last of which is render a decision based on the successor judge's, that's me, own findings of fact and conclusions of law. I thought that that's what I was doing in my memorandum of law. I said some of those things. I reviewed the record, considered everything and see it as a termination because everybody had been working on the question of residency up to here. I didn't see why we should suddenly change and say somebody else should work on the question of residency." Judge

application, shall have power to proceed therewith as if the subject matter had been originally brought to him."

O'Neill added that he did not find that proceeding with the trial had prejudiced any party.

I

The plaintiff claims that residency is a coverage issue and the case must be submitted to arbitration for resolution pursuant to General Statutes (Rev. to 1989) § 38-175c.[2] The plaintiff asserts that § 38-175c has removed the power to waive mandatory arbitration from both parties.

"General Statutes § 38-175c requires binding arbitration for 'final determination of insurance coverage' with respect to uninsured motorist claims if the insurance policy includes a provision for binding arbitration." *Gaudet* v. *Safeco Ins. Co.*, 219 Conn. 391, 394–95, 593 A.2d 1362 (1991); see also *Chmielewski* v. *Aetna Casualty & Surety Co.*, 218 Conn. 646, 657, 591 A.2d 101 (1991); *Oliva* v. *Aetna Casualty & Surety Co.*, 181 Conn. 37, 41, 434 A.2d 304 (1980). "Our Supreme Court has made it abundantly clear that the issue of coverage is to be decided through the arbitration process and not by the courts. *Security Ins. Co. of Hartford* v. *DeLaurentis*, 202 Conn. 178, 185, 520 A.2d 202 (1987)." *Quinn* v. *Middlesex Ins. Co.*, 16 Conn. App. 209, 211–12, 547 A.2d 95, cert. denied, 209 Conn. 817, 550 A.2d 1085 (1988). Our Supreme Court has held that the intent and effect of § 38-175c is to "remove from the court and to transfer to the arbitration panel the function of determining, in the first instance, all issues as to coverage under automobile liability insurance policies containing uninsured motorist clauses providing for arbitration." *Oliva* v. *Aetna Casualty & Surety Co.*,

[2] General Statutes (Rev. to 1989) § 38-175c provides in pertinent part: "(a) (1) Every such policy shall provide insurance, herein called uninsured motorist coverage, in accordance with such regulations . . . . Every such policy issued on or after October 1, 1971, which contains a provision for binding arbitration shall include a provision for final determination of insurance coverage in such arbitration proceeding. . . ."

supra, 42; see also *Wilson* v. *Security Ins. Group*, 199 Conn. 618, 622, 509 A.2d 467 (1986); *Lane* v. *Aetna Casualty & Surety Co.*, 203 Conn. 258, 263, 524 A.2d 616 (1987). Since § 38-175c provides mandatory arbitration only for coverage issues, we must first determine whether residency is an issue of coverage or arbitration.

"The arbitrability of a dispute, by contrast, is a legal question for the trial court to decide as a threshold matter." *Wynn* v. *Metropolitan Property & Casualty Ins. Co.*, 30 Conn. App. 803, 806, 623 A.2d 66 (1993). "[A] coverage issue is one that is governed wholly by the policy language . . . or involves the interpretation of both statutory and policy language . . . or otherwise implicates the scope of coverage afforded by the terms of the policy." (Citations omitted.) Id. "An issue of arbitrability, by comparison, is one that addresses the arbitrability of the claim and is capable of being decided by the court as matter of law irrespective of the terms of the policy." Id., 807. "Where an issue may fairly be characterized as either (1) an issue of arbitrability, i.e., a question for the courts to decide in the first instance, or (2) an issue of insurance coverage, i.e., a question for an arbitrator to decide in the first instance, legislative policy requires the court to elect the latter characterization and submit the issue to the arbitrator together with all other issues of insurance coverage." *Gaudet* v. *Safeco Ins. Co.*, supra, 219 Conn. 399.

In *Security Ins. Co. of Hartford* v. *DeLaurentis*, supra, 202 Conn. 188, our Supreme Court determined that the issue of whether a policy's uninsured motorist coverage provision extended benefits to accidents involving underinsured vehicles was essentially a coverage question. On the other hand, the question of whether the statutory duty to arbitrate coverage issues applied to motorcycle insurance policies was a threshold legal

question for the court to decide. *Beloff* v. *Progressive Casualty Ins. Co.*, 203 Conn. 45, 54, 523 A.2d 477 (1987). The issue of whether the failure to exhaust the liability coverage of an alleged tortfeasor's automobile liability insurance policy precluded a plaintiff from recovering underinsured motorist benefits was a coverage question. *Lane* v. *Aetna Casualty & Surety Co.*, supra, 203 Conn. 266. A dispute involving whether fleet policies could be stacked and whether uninsured motorist benefits should be set off by the amount of workers' compensation benefits collected were classified as coverage issues. *Wilson* v. *Security Ins. Group*, supra, 199 Conn. 618. In *Quinn* v. *Middlesex Ins. Co.*, supra, 16 Conn. App. 213, we held that an issue as to whether the policy in question "should be construed to extend benefits to the plaintiff is a question of coverage which must be submitted to arbitration." We conclude that, because the issue of residency determines whether the plaintiff is an intended beneficiary of the insurance policy, it is a coverage issue. The plaintiff, therefore, initially had the right to have that issue resolved by a panel of arbitrators. The plaintiff, however, waived that right by agreeing to have the trial court decide the issue. The plaintiff, however, now asserts that the waiver is ineffective because § 38-175c made submission to arbitration mandatory.

In *Gaudet* v. *Safeco Ins. Co.*, supra, 219 Conn. 397, our Supreme Court determined that the "legislative purpose favoring arbitration for all uninsured motorist coverage issues would be defeated if it were available only to named insureds," thereby allowing a plaintiff, such as the one in this case, who is not the named insured and is a potential third party beneficiary to benefit from the enactment of § 38-175c. The Supreme Court in *Gaudet* added that "[i]n enacting § 38-175c, the legislature thus implicitly assumed that the word 'party' in [General Statutes] § 52-410 would encompass all persons to

whom the uninsured motorist statute gave enforcement powers."[3] Id. Consequently, § 38-175c gave the plaintiff the power to compel the defendant to arbitrate the issue of residency before a panel of arbitrators, however, § 38-175c does not make exercise of that power obligatory. The plaintiff's failure to enforce such a right at the appropriate time amounted to a waiver. See *Security Ins. Co. of Hartford* v. *DeLaurentis*, supra, 202 Conn. 188 (defendant's *election* to arbitrate pursuant to uninsured motorist clause must be honored).

It is well established that "an arbitration clause may be waived by the parties or by the one entitled to its benefit." *Waterbury Teachers Assn.* v. *Waterbury*, 164 Conn. 426, 435, 324 A.2d 267 (1973). Going to trial, therefore, without insisting on the arbitration condition may warrant a finding of waiver. *Batter Building Materials Co.* v. *Kirschner*, 142 Conn. 1, 11, 110 A.2d 464 (1954). "The essential question is whether, under the totality of circumstances, the . . . [party claiming arbitration] has acted inconsistently with the arbitration right." *National Foundation for Cancer Research* v. *A.G. Edwards & Sons, Inc.*, 821 F.2d 772, 774 (D.C. Cir. 1987). The plaintiff initially did not insist on having a panel of arbitrators determine the issue of residency; the plaintiff, instead, agreed to have the trial court decide the issue on the merits. Moreover, the plaintiff during oral argument of this appeal conceded that, in the oral argument of the first appeal, he had abandoned the issue regarding the appropriate forum to hear the

---

[3] General Statutes § 52-410 (a) provides: "A party to a written agreement for arbitration claiming the neglect or refusal of another to proceed with an arbitration thereunder may make application to the superior court for the judicial district in which one of the parties resides or, in a controversy concerning land, for the judicial district in which the land is situated or, when the court is not in session, to any judge thereof, for an order directing the parties to proceed with the arbitration in compliance with their agreement. The application shall be by writ of summons and complaint, served in the manner provided by law."

issue of residency during oral arguments of the first appeal. The plaintiff's argument that § 38-175c has removed from the parties the power to waive is without merit. The plaintiff has acted inconsistently with his right to have the issue of residency be determined by a panel of arbitrators. We conclude, therefore, that the plaintiff waived his right under § 38-175c to have the issue of residency heard by a panel of arbitrators.

## II

The plaintiff claims that his initial waiver of arbitration on the issue of residency was negated when Judge Aronson declared a mistrial. We must determine whether Judge O'Neill was bound by Judge Aronson's decision declaring a mistrial in the case. " 'The law of the case is not written in stone but is a flexible principle of many facets adaptable to the exigencies of the different situations in which it may be invoked. See 18 Wright, Miller & Cooper, Federal Practice and Procedure: Jurisdiction § 4478.' " *Rosenblit* v. *Danaher*, 206 Conn. 125, 132, 537 A.2d 145 (1988). Our Supreme Court has recognized that "the law of the case doctrine is not one of unbending rigor . . . . A judge is not bound to follow the decisions of another judge made at an earlier stage of the proceedings, and if the same point is again raised he has the same right to reconsider the question as if he had himself made the original decision. *Santoro* v. *Kleinberger*, 115 Conn. 631, 638, 163 A. 107 (1932)." (Internal quotation marks omitted.) *Rosenblit* v. *Danaher*, supra, 132–33; see also *State* v. *Mariano*, 152 Conn. 85, 91, 203 A.2d 305 (1964), cert. denied, 380 U.S. 943, 85 S. Ct. 1025, 13 L. Ed. 2d 962 (1965). "In essence [the law of the case] expresses the practice of judges generally to refuse to reopen what has been decided and is not a limitation on their power. *Messenger* v. *Anderson*, 225 U.S. 436, 444, 32 S. Ct. 739, 56 L. Ed. 1152 (1912)." *S.M.S. Textile Mills, Inc.* v. *Brown, Jacobson, Tillinghast, Lahan & King, P.C.*, 32 Conn. App. 786,

798, 631 A.2d 340, cert. denied, 228 Conn. 903, 634 A.2d 296 (1993). "Where a matter has previously been ruled upon interlocutorily, the court in a subsequent proceeding in the case *may* treat that decision as the law of the case, if it is of the opinion that the issue was correctly decided, in the absence of some new or overriding circumstance. *State* v. *Hoffler*, 174 Conn. 452, 462–63, 389 A.2d 1257 (1978); *State* v. *Mariano*, [supra, 91–92]." (Emphasis added.) *Breen* v. *Phelps*, 186 Conn. 86, 99, 439 A.2d 1066 (1982).

Under this doctrine, Judge O'Neill could have treated Judge Aronson's decision as the law of the case, but he was not bound to do so. Because of the flexible nature of the law of the case doctrine, Judge O'Neill had the right to reconsider the mistrial decision rendered by Judge Aronson. "A judge should hesitate to change his own rulings in a case and should be even more reluctant to overrule those of another judge. 1B Moore's Federal Practice (2d Ed.) ¶ 0.404 [4]." *Breen* v. *Phelps*, supra, 186 Conn. 99. Unlike Judge Aronson, Judge O'Neill found that the matter could be completed without prejudice to the parties and, therefore, rendered a decision based on his own findings of fact and conclusions of law. "From the vantage point of an appellate court it would hardly be sensible to reverse a correct ruling by a second judge on the simplistic ground that it departed from the law of the case established by an earlier ruling. 18 Wright, Miller & Cooper, [Federal Practice and Procedure: Jurisdiction] § 4478; *Parmelee Transportation Co.* v. *Keeshin*, 292 F.2d 794, 797 (7th Cir.), cert. denied, 368 U.S. 944, 82 S. Ct. 376, 7 L. Ed. 2d 340 (1961)." *Breen* v. *Phelps*, supra, 100. "In an appeal to this court where views of the law expressed by a judge at one stage of the proceedings differ from those of another at a different stage, 'the important question is not whether there was a difference but which view was right.' *Daw-*

*son* v. *Orange*, 78 Conn. 96, 129, 61 A. 101 (1905)." Id. Although Judge O'Neill's decision differed from Judge Aronson's, we cannot determine that Judge O'Neill's decision that the case could be completed without prejudice to the parties was incorrect.[4]

### III

The plaintiff next argues that once Judge O'Neill determined that the matter would be completed rather than retried after the mistrial, the plaintiff should have been notified of that decision and given the opportunity to "recall any witness whose testimony is material and disputed and who is available to testify without due burden" before rendering a decision on the matter. *Stevens* v. *Hartford Accident & Indemnity Co.*, supra, 29 Conn. App. 386. " '[I]t is a well-recognized principle of law that the opinion of an appellate court, so far as it is applicable, establishes the law of the case upon a retrial, and is equally obligatory upon the parties to the action and upon the trial court. *Laurel, Inc.* v. *Commissioner of Transportation*, 173 Conn. 220, 222, 377 A.2d 296 (1977); *Gray* v. *Mossman*, 91 Conn. 430, 434, 99 A. 1062 (1917); 5 Am. Jur. 2d, Appeal and Error § 744.' *Dacey* v. *Connecticut Bar Assn.*, 184 Conn. 21, 23, 441 A.2d 49 (1981)." *Suffield Bank* v. *Berman*, 228 Conn. 766, 774, 639 A.2d 1033 (1994).

The right to notice is fundamental to due process and " 'must be granted a meaningful time and in a meaningful manner.' " *All Brand Importers, Inc.* v. *Dept. of Liquor Control*, 213 Conn. 184, 208, 567 A.2d 1156 (1989). It is well established that, "if feasible, notice must be reasonably calculated to inform parties of pro-

---

[4] Because Judge O'Neill decided that he could proceed with the trial without declaring a mistrial, that decision became the trial court decision under the law of the case doctrine. *Santoro* v. *Kleinberger*, 115 Conn. 631, 638, 163 A. 107 (1932). The plaintiff's claim that a mistrial negated any earlier waiver is, therefore, moot. Id.

ceedings which may directly and adversely affect their legally protected interests." *Walker* v. *Hutchinson City*, 352 U.S. 112, 115, 77 S. Ct. 200, 1 L. Ed. 2d 178 (1956). Our Supreme Court has held that " 'it is a principle of natural justice of universal obligation, that before the rights of an individual be bound by a judicial sentence he shall have notice . . . of the proceedings against him.' *Parsons* v. *Lyman*, 32 Conn. 566, 576 [1863], quoting Mr. Chief Justice Marshall in *The Mary*, 13 U.S. (9 Cranch) 126, 3 L. Ed. 678 [1815]." *Kron* v. *Thelen*, 178 Conn. 189, 193, 423 A.2d 857 (1979). "Fundamental tenets of due process, moreover, require that all persons directly concerned in the result of an adjudication be given reasonable notice and the opportunity to present their claims or defenses. *Dohany* v. *Rogers*, 281 U.S. 362, 369, 50 S. Ct. 299, 74 L. Ed. 904 (1930)." *Kron* v. *Thelen*, supra, 193.

Once the trial court determined from the record that the matter could be completed without prejudice, the parties should have been given notice of that decision. The record reveals that, when the parties appeared before the court at the April 19, 1993 hearing, they were operating on the premise that Judge Aronson's decision was controlling. The trial court neither informed the parties that it had decided to render a decision based on its own findings and conclusions nor afforded the parties the opportunity to present evidence by recalling any witnesses whose testimony was material and disputed. Close examination of the transcript of the April 19, 1993 hearing reveals that the parties were focusing on the plaintiff's claim that the question of residency should be resolved by a panel of arbitrators and not by the court. The record is clear that neither the plaintiff nor the defendant understood that he was before the court with respect to the merits of the residency issue. The plaintiff, therefore, was denied his due process

rights by not being afforded a reasonable opportunity to present his claim to the court. See *Kron* v. *Thelen,* supra, 193.

The judgment is reversed and the case is remanded for further proceedings in accordance with our decision in *Stevens* v. *Hartford Accident & Indemnity Co.,* supra, 29 Conn. App. 378.

In this opinion the other judges concurred.