[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
Plaintiff, Allstate Insurance Company, applied to have this court vacate, correct or modify an uninsured motorist arbitration award. That award for $225,000 in favor of the defendant, John A. Caltabiano, D.V.M., was made by a two-to-one majority-of the arbitrators. Allstate had issued a automobile insurance policy to Caltabiano for the period February 5, 1989 to February 5, 1990. The declarations page of the policy declared the limit of liability for uninsured motorist insurance was $40,000.
Defendant Caltabiano has moved to confirm the arbitration majority's $225,000 award. Motion/Cross-Application To Confirm Arbitration Award and Assess Interest On Arbitration Award, July 31, 2000. [106]
Caltabiano had submitted a completed "Allstate Commercial Auto Application," a printed form. On the line "Uninsured Motorist Coverage," there is a handwritten entry, "$40,000" which is followed by the printed "per accident." Caltabiano had signed the application. Exhibit 2.
The policy as issued by Allstate to Caltabiano contained the following:
 D. LIMIT OF INSURANCE CT Page 16963
 1. Regardless of the number of covered "autos," "insureds," premiums paid, claims made or vehicles involved in the "accident," the most we will pay for all damages resulting from any one "accident" is the LIMIT OF INSURANCE for UNINSURED MOTORISTS COVERAGE shown in the Declarations.
Business Auto Policy, Policy Number: 057392472 BAP, Endorsement re Uninsured Motorist Coverage, p. 1 of 3. Exhibit 1.
The arbitration provision in the policy provided for arbitration if Allstate and its insured `disagree whether the insured' is legally entitled to recover damages from the owner or operator of an `uninsured motor vehicle' or do not agree as to the amount of damages. . . ." Id., p. 2 of 3.[1]
On January 20, 1990, during the policy period, Caltabiano was injured in a collision between his vehicle and one driven by a Leigh T. McLean. The parties do not dispute that McLean was an uninsured motorist." Nor is there any dispute with the arbitrators' finding that "[t]he collision was the direct result of the carelessness and negligence of the uninsured driver, in failing to drive her car in the established lane of travel and in traveling too fast for the conditions then and there prevailing." Arbitration Award, p. 1.[2] The court does not understand Allstate to contest here the majority's finding that Caltabiano's injuries merited a recovery of $225,000. Allstate does dispute that $225,000 should be recovered from it (Allstate).
The arbitrator majority stated in relevant part:
 "The Plaintiff at the time of the aforesaid collision had an automobile policy with the Defendant Allstate Insurance Company, which provided uninsured motorist coverage. The stated amount of said coverage on the policy declaration sheet was $40,000. However the Plaintiff contests this amount, claiming the coverages is $300,000.
 "The Plaintiff testified that at all times he thought he had $300,000 uninsured motorist coverage. The Defendant introduced the Application For Coverage form, showing the uninsured motorist coverages stated thereon is $40,000. The Plaintiff testified that the first time he learned about the $40,000 coverage, was after the accident, when his lawyer, Laurence v. Parnoff, so advised him. The Plaintiff had spoken to CT Page 16964 an Allstate agent, Joseph Pietrosante, who confirmed to him that the correct policy limits for uninsured motorist coverage was $300,000, that the stated amount on the policy declaration sheet was a mistake and that he would correct the same to reflect the $300,000 figure. The Defendant introduced an affidavit from Mr. Pietrosante, not denying the conversation but stating that he does "not recall having a conversation with Mr. John Caltabiano regarding changing his uninsured motorist coverage from $40,000 to $300,000. The arbitrators accept the testimony of the Plaintiff in this regard.
* * *
 "But in this case, there is an issue of mutual mistake: the agent Pietrosante failing to comply with the Plaintiff's request for $300,000 UI coverage, the Plaintiff failing to check the application and policy declaration sheet to see that it complied with his intent. The issue, then, before this panel is: what is the actual amount of uninsured motorist coverage.
* * *
 "The undersigned arbitrators, in accordance with the applicable law and case law, hereby exercise its authority and finds the uninsured motorist coverage to be $300,000."
Arbitration Award, June 7, 2000. Exhibit 3.
 The dissenting arbitrator stated on the limit of liability question:
 "I am unable to agree with the decision of the majority of this panel with respect to the issue of the amount of the claimant's uninsured motorist coverage and, accordingly, I dissent.
 "This arbitrator concurs with the first two paragraphs of the statement of facts contained in the Arbitration Award. This arbitrator does not concur with all the facts contained in the third paragraph and offers the following additional relevant facts:
 "The Claimant is a college educated individual who CT Page 16965 has been a practicing veterinarian for approximately sixteen years. He did not deny that the photocopy of the Application for Coverage offered by the Defendant was a true copy of the original application, nor did he deny that the signature on page two of that application was his. The Application form clearly indicates, on page one, that the policy provides for $300,000 in liability coverage and $40,000 in uninsured motorist coverage.
 "At the time of the claimant's accident, the statute controlling the coverage issue at hand was Connecticut General Statutes Section 38a-336 (a)(2), which provided, in pertinent part, that automobile liability policies after July 1, 1984 "shall provide uninsured motorist coverage with limits for bodily injury and death equal to those purchased to protect against loss resulting from the liability imposed by law; unless the insured requests in writing a lesser amount . . ." (emphasis added). The Respondent contended that the Claimant had made an effective, written request for lower limits of uninsured motorist coverage and that, therefore, his recovery is limited to $40,000. This arbitrator agrees with the Respondent for the reasons articulated herein.
 "In the instant case the Respondent introduced a writing, signed by the named insured, requesting $300,00 in liability coverage and a lesser amount, $40,000, in uninsured motorist coverage. Thus, unless the Claimant could prove mutual mistake, or fraud or inequitable conduct on the part of either party, the claimant is deemed to have made an effective request for lower limits.
 "The majority found mutual mistake based on the claimant's purported testimony that he had requested $300,000 in uninsured motorist coverage and only learned after his accident that the Respondent claimed he had only $40,000, as well as his self serving testimony that he spoke to his agent after the accident who confirmed there had been a mistake. This is not proof of a mutual mistake. There is no evidence that Allstate was mistaken about the amount of the uninsured motorist coverage the Claimant had requested. The only evidence as to what Allstate knew CT Page 16966 was that Mr. Caltabiano signed a written application for uninsured motorist coverage in the amount of $40,000 and was issued a policy with that coverage. Any mistake with respect to the amount of uninsured motorist coverage was unilateral on the part of the Claimant and therefore the contract may not be reformed. See Harlach v. Metropolitan, supra, at 190.
 "There was likewise no proof of fraud or inequitable conduct on the part of either party and thus, the Claimant's written request for lower limits of uninsured motorist coverage must be deemed effective. This arbitrator finds, therefore, that the Claimant's recovery should be limited to the policy limits of $40,000."
Dissent, June 27, 2000. Exhibit 4.
Allstate's Application to Vacate, Correct or Modify Award, July 6, 2000 states in part:
 10. The subject policy of insurance was issued for delivery and was delivered in the State of Connecticut, and the arbitration was in accordance with the compulsory arbitration provisions of the Connecticut General Statutes.
 11. The arbiters failed to conform their award to the laws of the State of Connecticut, thereby they exceeded their powers and/or so imperfectly executed them that a mutual, final and definite award upon the subject matter submitted was not made on one or more of the following respects, in that:
 a. they failed to limit the award to the amount of uninsured motorist coverage purchased and defined by the contract and declarations page;
 b. they attempted to reform the terms and conditions of the policy when the same was not within the scope of the submission;
 c. they reformed the limits of coverage without sufficient and competent evidence; CT Page 16967
 d. they exceeded their powers by considering issues of reformation of contract outside the Submission required by statute; or
 e. their decision is so inconsistent with Connecticut law that a mutual, final and definite award was not made.
 WHEREFORE, the plaintiff moves the Court, pursuant to statute, case law and the subject insurance policy, to ORDER:
 1. That the award be vacated, corrected or modified to the extent necessary to void the Arbitration Award.
 2. That an Order be issued directing the defendant to appear on a day certain to show cause, if there be any, why this Application should not be granted.
 3. That an Order be entered staying any proceedings by the defendant to enforce the award pending final disposition of the application.
 4. That the award be vacated insofar as the Arbitration Award found that the Allstate Insurance Company provided $300,000.00 of uninsured motorist coverage under the subject policy for the subject claim and/or vacated and corrected insofar as the award failed to limit the Allstate Insurance Company's uninsured motorist limits of liability to the coverage elected, paid for and described in the application signed by the claimant and declarations of coverage provided to the claimant in the amount of $40,000."
Application to Vacate, Correct or Modify Award, July 6, 2000, pp. 2-3.
When the policy was issued to Caltabiano in 1989, a statute provided:
 "Every such policy shall provide insurance, herein called uninsured motorist coverage, in accordance with such regulations, with limits for bodily injury or death not less than those specified in subsection (a) of section 14-112, for the protection of persons insured thereunder who are legally entitled to recover damages from owners or operators of uninsured motor CT Page 16968 vehicles and underinsured motor vehicles and insured motor vehicles, the insurer of which becomes insolvent prior to payment of such damages, because of bodily injury, including death resulting therefrom, provided each insurer licensed to write automobile liability insurance in this state shall provide such uninsured motorists coverage with limits requested by the named insured upon payment of the appropriate premium, but such insurer shall not be required to provide such coverage with limits in excess of the limits of the bodily injury coverage of such policy issued to such named insured. No insurer shall be required to provide uninsured motorist coverage to (A) a named insured or relatives residing in his household when occupying, or struck as a pedestrian by, an uninsured or underinsured motor vehicle or a motorcycle that is owned by the named insured, or (B) to any insured occupying an uninsured or underinsured motor vehicle or motorcycle that is owned by such insured. Every such policy issued on or after October 1, 1971, which contains a provision for binding arbitration shall include a provision for final determination of insurance coverage in such arbitration proceeding. With respect to any claim submitted to arbitration on or after October 1, 1983, the arbitration proceeding shall be conducted by a single arbitrator if the amount in demand is forty thousand dollars or less or by a panel of three arbitrators if the amount in demand is more than forty thousand dollars." [Italics and underlining added.] C.G.S.(Rev. To 1989) § 38-175c.[3]
The arbitrators heard the case on five separate days. The proceedings were not recorded by a court stenographer or otherwise. There is no transcript of those proceedings.
Throughout, Caltabiano's primary, consistent, and persistent defense has been and is that this court is precluded from granting Allstate relief in this case because no transcript of the proceedings before the arbitrators was made. Caltabiano relies on Chmielewski v. Aetna Casualty Surety Co., 218 Conn. 646 (1991)
In Chmielewsi, plaintiff appealed the trial court's modification of an underinsured motorist coverage arbitration award in her favor. Plaintiff's decedent owned a motorcycle. While he was operating it he was killed in a collision with a truck. CT Page 16969
Plaintiff's decedent was the sole owner of a plumbing and heating business. Defendant (Aetna) had issued him a "Business Auto Policy." Nine vehicles were listed on the policy with $500,000 uninsured motorist coverage for each vehicle. The motorcycle was not listed as a covered vehicle. The named insured on the policy was "R E Chmielewsi Plumbing 
Heating ATIMA" ["ATIMA" is an abbreviation for "as their interests may appear."]
The arbitrators found the policy was a "business policy." They permitted stacking thus finding limit of liability thereunder was $4,500,000. The arbitrators award reflected that limit. After the award and while the case was pending in the trial court, the Supreme Court held in Cohn v. Aetna Ins. Co., 213 Conn. 525 (1990), "that stacking was notavailable under a policy covering a number of vehicles owned by abusiness. . . ." "Plaintiff moved to supplement the record `to allow additional evidence on the issue of ownership of the vehicles listed on the subject policy.'" Id., 652. "The plaintiff argued that she was entitled to a de novo review of the arbitrators' factual determination that the policy in question was a business automobile policy, and that she was entitled to introduce evidence to establish that it was not such a policy." Id.
The trial court held "`it was under no binding precedent to conduct a de novo review of the factual finding by the arbitrators that the policy in question is one issued to a business. The court is satisfied by the record that the policy in question is a business automobile policy.' The court accordingly denied the plaintiff's motion to supplement the record." Chmielewsi v. Aetna Casualty Surety Co., 218 Conn. 646, 652-3
(1991).
On appeal, plaintiff claimed she was entitled to de novo review of the arbitrators' factual finding that the policy was a business policy. Plaintiff made a constitutional challenge, ". . . namely, that she was deprived of her federal and state rights to due process of law because of the absence of de novo review of factual findings." Id., 661.
The Supreme Court held de novo review of the arbitrators factual findings was not constitutionally required. The Supreme Court said:
 "We conclude that such de novo review is not constitutionally required, but that the appropriate standard of review is the "substantial evidence" test that prevails in review of factual determinations by administrative agencies, is required. We also conclude that, except in special circumstances not present in CT Page 16970 this case; compare General Statutes 4-183 (i); a party does not have the right to introduce evidence in the reviewing court in connection with that review." Chmielewsi v. Aetna Casualty Surety Co., 218 Conn. 646, 656 (1991).
The Supreme Court then stated:
 "Furthermore, in order to ensure that the court is able to undertake that review effectively, we construe 38-175c to incorporate a requirement that a record of the arbitration proceedings be preserved and made available to the court in connection with any such review." [Footnote omitted.] Chmielewsi, 661.
* * *
 "Furthermore, unlike voluntary arbitration, where no record of the arbitration proceeding is required, we require that under 38-175c such a record must be made and preserved." Chmielewsi, 663.
The statute requires that coverage questions be determined in the arbitration. The Supreme Court has characterized this as "a compulsory arbitration provision." Chmielewski v. Aetna Casualty Surety Co.,218 Conn. 646, 658 (1991); Wilson v. Security Ins. Group, 199 Conn. 618,626 (1986).
Caltabiano's reliance on Chmielewsi v. Aetna Casualty Surety Co. is misplaced. It is clear Chmielewski's mandate for a transcript is directed to judicial review of the factual findings and conclusions of arbitrators. That review must be made under the "substantial evidence rule." For the court to make such a review, a transcript is necessary.
 "We perceive no legislative barrier . . . to reading 38-175c so as to provide a substantial evidence standard of judicial review of factual findings, and we construe 38-175c and 52-418 to incorporate that standard in order to `implement the legislature's purpose in a manner that is both effective and constitutional. . . ." Id., 96. Furthermore, in order to ensure that the court is able to undertake that review effectively, we construe 38-175c to incorporate a requirement that a record of the arbitration proceedings be preserved and made available to the court in connection with any such review." [Footnotes CT Page 16971 omitted.] Chmielewsi v. Aetna Casualty Surety Co., 218 Conn. 646, 660-661 (1991).
Allstate's principal reason(s) for overturning the award is not based on a claim that the a factual findings made by a majority of the arbitrators were not supported by substantial evidence. Thus, Caltabiano's hope that the absence of a transcript precludes the court from deciding Allstate application to vacate etc. is groundless.
Furthermore, legal conclusions underlying a compulsory arbitration award are subject to de novo judicial review. In discussing the scope of judicial review of uninsured motorist insurance arbitral awards, the Supreme Court stated:
 "In addition, the legal bases of their [the arbitrators'] decisions are subject to de novo review by the court; American Universal Ins. Co. v. DelGreco, supra; and review of questions of law includes challenges to arbitral decisions on the grounds of corruption, fraud, undue means or partiality, and inquiry into whether the arbitrators have exceeded their powers or imperfectly executed them. General Statutes 52-418 (a)." Chmielewski v. Aetna Casualty Surety Co., 218 Conn. 646, 660-664
(1991).
Caltabiano's claim that Allstate cannot have the award reviewed by this court because no transcript of the arbitration proceedings is available is without merit.[4]
As the court understands Allstate's position, Allstate claims that the majority arbitrators reformed the insurance policy under the guise of determining insurance. According to Allstate, arbitrators, acting pursuant to the authority of C.G.S. § 38-175c, are not authorized to reform the insurance contract.
The main dispute here is the dollar amount of the policy's limit of liability for uninsured motorist coverage. Caltabiano claims it is $300,000; Allstate $40,000.
The question then is whether the disputed limit of liability for uninsured motorist insurance comes within C.G.S. § 38-175c's "final determination of insurance coverage."
The authority of arbitrators in deciding an uninsured motorist coverage issue including whether the arbitrators have the authority to reform an CT Page 16972 insurance policy is most certainly a question of law. As such it is subject to de novo judicial review. Surely, the question whether such arbitrators can reform an insurance policy comes squarely within the "inquiry into whether the arbitrators have exceeded their powers or imperfectly executed them." C.G.S. § 52-418.
Unquestionably, the court has the authority to decide this case.
It is suggested that the dollar amount of the policy's limit of liability is not a coverage issue. In Quigley-Dodd v. General Accident Ins. Co. of America, 256 Conn. 225 (May 22, 2001)., the Supreme Court endorsed the idea that the dollar amount of the policy limits is a coverage question. The Supreme Court referred to Smith v. NationalIndemnity Company, 57 Wisc.2d 205, N.W.2d 365 (1973). In that case, the Wisconsin Supreme Court observed:
 "Coverage, it is argued, is restricted to the type and scope of the risk and not the dollar limit of liability. While it is true that `coverage' is often used as a word of art in the insurance industry and as such refers only to the risk of loss or the type of risks assumed, `coverage' is also used especially by lay people to include not only the type of risks but the dollar limits of liability or amount of indemnity." Smith v. National Indemnity Company, 57 Wisc.2d 205, N.W.2d 365, 368 (1973)
Our Supreme Court stated the Smith court "simply recognized that the dollar amount of the the policy limits is a coverage question." Our Supreme Court then said: "We have no quarrel with that conclusion."Quigley-Dodd v. General Accident Ins. Co. of America, 256 Conn. 225,238, n. 8 (May 22, 2001).
Recently, the Supreme Court defined the scope of a coverage question in the uninsured motorist insurance context.
 ". . . that a question that requires [a court] to determine the rights of the parties to an insurance contract under the terms of the insurance policy and governing insurance law, as distinct from the amount of damages that the claimant can recover from the uninsured motorist, is a coverage issue. . . ." Quigley-Dodd v. General Accident Ins. Co. of America, 256 Conn. 225, 240-1 (May 22, 2001).
 "The essential point is that when the focus is on tort CT Page 16973 law governing the right to recover damages from the uninsured motorist or the measure of such damages, the issue is a damages issue, and when the focus is on law governing recovery against an insurer as such, the issue is a coverage issue." Id., 442.
With these points in mind, there can be no question that determination of the amount of the uninsured motorist limits of liability provided by a policy is a coverage question.
Here the issue is whether Caltabiano can recover only $40,000 or as much as $300,000 from Allstate. The focal point of the issue clearly is the "law governing recovery against [the] insurer [Allstate]." It is therefore a coverage issue.
The court holds that the dollar amount of the limit of liability for uninsured motorist coverage is a matter of coverage subject to compulsory arbitration by C.G.S. (Rev. to 1989) § 38-175c.
Allstate claims the arbitrators were not authorized to reform the contact under their authority to make "a final determination of insurance coverage." Allstate relies, to some extent on two 1994 superior court cases. Each is discussed here.
In the first, the uninsured motorist arbitration panel, sought, pursuant to C.G.S. § 52-415, sought the advice of the court on whether the arbitrators had the "authority to reform an automobile insurance contract." Michael Crowe was the minor son of Deborah Crowe. Michael was injured was struck by an uninsured motorist. The defendant had issued an automobile insurance policy to Alan G. Evanuk. Evanuk was listed as the named insured. Evanuk and Deborah Crowe were listed as operators of the insured vehicles.
 "The arbitration panel unanimously agreed that there was sufficient evidence of mutual mistake on the part of Maryland and Evanuk to warrant reformation of the insurance contract. The panel agreed that the true intent of the parties was that Deborah Crowe be listed as an insured rather than an operator on the insurance contract. The arbitrators could not agree, however, on whether the panel had the authority to reform the contract. Therefore, the arbitrators now seek the advice of the court pursuant to General Statutes 52-415
regarding the arbitrators' authority to reform the contract."
CT Page 16974 The court stated:
 "Thus, the authority of an arbitration panel to resolve issues pursuant to an uninsured motorist provision of an automobile insurance contract is limited to determining only those issues regarding coverage." Id.
 "In the present case, the arbitrators had the authority to decide only those issues concerning coverage. See General Statutes 38a-336 (c), see also Security Ins. Co. of Hartford v. DeLaurentis, supra, 188. Whether or not an insurance contract should be reformed is not a coverage question. See, e.g., Lane v. Aetna Casualty Surety Co., 203 Conn. 258, 267, 524 A.2d 616 (1987) (whether the unexhausted liability coverage precluded the plaintiff from recovering underinsured motorist benefits is a question of coverage); Security Ins. Co. of Hartford v. DeLaurentis, supra, 188 (whether a policy's uninsured motorist coverage provision extended benefits to accidents underinsured vehicles is a question of coverage); Wilson v. Security Ins. Group, supra, 623-24 (questions involving whether fleet policies could be stacked and whether uninsured motorist benefits should be set off by the amount of workers' compensation benefits collected are ones of coverage). Thus, the arbitrators did not have the authority to even consider evidence of mutual mistake and the remedy of reformation of contract." Crowe v. Assurance Company, Superior Court, judicial district of New London, Docket No. 52 64 97, (April 15, 1994, Austin, J.)
The three Supreme Court cases mentioned each illustrate a question which the Supreme Court held were coverage questions to be decided by the arbitrators. How the holdings in those cases prompt the conclusion inCrowe that "the arbitrators did not have the authority to even consider evidence of mutual mistake and the remedy of reformation of contract" is far from clear. This court does not find Crowe persuasive authority for deciding this case.
The other 1994 decision of this court relies on Crowe. It was an action to reform an insurance contract. The dispute centered upon meaning of "family member," as used in an uninsured motorist provision of an automobile policy issued to a corporation. Apparently, the policy was CT Page 16975 issued to corporation which cannot have family members. The insurer moved to dismiss claiming the issue had to be resolved in arbitration. The court stated:
 "The court does not believe that this action to reform an insurance contract may be decided by arbitration. "Where, as in the present case, an insurance policy contains a binding arbitration provision in accordance with General Statutes § 38a-336 (c), the authority of an arbitration panel to resolve issues pursuant to an uninsured motorist provision of an automobile insurance contract is limited to determining only those issues regarding coverage. Whether or not an insurance contract should be reformed is not a coverage question. Crowe v. Assurance Co., 9 CSCR 535 (May 30, 1994), citing Security Ins. Co. of Hartford v. DeLaurentis, 202 Conn. 178, 186. Also see Ceci v. National Indemnity Co., 225 Conn. 165 (1993).
 "The motion to dismiss is denied." (Internal quotation marks omitted.) Suleski v. Liberty Mutual Insurance Co., judicial district of Hartford-New Britain at Hartford, Docket No. CV 94 0539302, (Nov. 14, 1994, Allen, J.)
Again, the court does not find that Suleski is convincing authority for this case.
In this court's view, the question is not whether reformation of a policy is a coverage matter. Phrasing the issue that way misleads. The court has held that determination of the dollar amount of the limit of liability for uninsured motorist insurance in a policy is a coverage issue to be decided by the arbitrators.
The real question is whether the arbitrators have the power to reform the policy to agree with their determination of the dollar amount of the limit of liability for uninsured motorist coverage.
Neither party addressed this issue directly. The court finds no direct authority for same. And, the indirect authority is slim.
There are cases holding that arbitrators have such power. See e.g.,International Union of Operating Engineers, Local Union No. 139 v. CarlA. Morse, Inc., 529 F.2d 574 (7 Cir 1976); and, Matter of SCM Corp.,40 N.Y.2d 788, 390 N.Y.S.2d 398, 358 N.E.2d 1024 (1976). Both of those CT Page 16976 cases involved voluntary arbitration. The court has not found authority that arbitrators in a compulsory arbitration can change the written terms of the agreement.
The decisions of the Supreme Court are replete with statements that arbitration is highly favored and every presumption is to be made in favor of making it effective.
The precedents express very strongly that when "coverage" is at issue in an uninsured motorist insurance dispute, every presumption should be made in favor of having a final determination of coverage issues decided by the arbitrators. The recent case, Quigley-Dodd v. General AccidentIns. Co. of America, 256 Conn. 225 (May 22, 2001), contains such statements which typify the statements often made before by the Supreme Court.
 "We previously have recognized the legislative policy favoring arbitration of uninsured motorist claims underlying § 38a-336 (c). In Chmielewsi v. Aetna Casualty Surety Co., supra, 218 Conn. 664, we stated that "the state has a substantial interest, as expressed in the compulsory arbitration provision of § 38-175c [now § 38a-336 (c)], in providing a procedure for the resolution of uninsured motorist coverage disputes that is ordinarily less costly and more timely than traditional litigation." With this policy in mind, this court has, in cases involving the determination of whether an issue was an arbitrability issue for the court or a coverage issue subject to compulsory arbitration, placed its thumb on the side of coverage. In Gaudet v. Safeco Ins. Co., 219 Conn. 391, 399, 593 A.2d 1362 (1991), we held that "[w]here an issue may fairly be characterized as either (1) an issue of arbitrability, i.e., a question for the courts to decide in the first instance or (2) an issue of insurance coverage, i.e., a question for an arbitrator to decide in the first in stance, legislative policy requires the court to elect the latter characterization. . . ." We concluded that the question of whether a vehicle had been converted by the claimant and the operator of the vehicle was a coverage issue rather than a preliminary arbitrability issue to be determined by the court. See Lane v. Aetna Casualty Surety Co., 203 Conn. 258, 265, 524 A.2d 616
(1987) (recognizing that legislative policy favoring arbitration would be thwarted if arbitrators were CT Page 16977 required to interpret policy in one proceeding while courts determined effect of statute in another); id. (holding that failure to exhaust liability coverage of tortfeasor is a coverage issue); Security Ins. Co. of Hartford v. DeLaurentis, 202 Conn. 178, 186, 520 A.2d 202
(1987) (recognizing legislative policy favoring arbitration); id., 184 (holding that whether underinsured motor vehicle is "uninsured automobile" under policy is question of coverage); Stevens v. Hartford Accident Indemnity Co., 39 Conn. App. 429, 434, 664 A.2d 826 (1995) (recognizing legislative policy favoring arbitration and holding that whether claimant was resident of household entitled to uninsured motorist benefits was coverage issue subject to predecessor to § 38a-336 [c]); Quinn v. Middlesex Ins. Co., 16 Conn. App. 209, 211-13, 547 A.2d 95, cert. denied, 209 Conn. 817, 550 A.2d 1085
(1988) (recognizing legislative policy favoring arbitration and holding that status of one claiming to be insured relative of named insured is a coverage question).
 "We also note that we previously have held, as a general matter, that, "because we favor arbitration, we will defer to this alternative method of dispute resolution if the contractual arbitration provisions fall within the grey area of arbitrability. . . ." (Citation omitted.) White v. Kampner, 229 Conn. 465, 472-73, 641 A.2d 1381 (1994). "An order to arbitrate the particular grievance should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute. Doubts should be resolved in favor of coverage." (Emphasis in original; internal quotation marks omitted.) Id., 473. Thus, it is clear that, in the absence of the compulsory arbitration statute, if the parties to an insurance contract agrees to exclude coverage issues from arbitration and a dispute arose concerning whether an issue was a coverage issue or a damages issue, any doubt would be resolved in favor of finding it to be a damages issue covered by the arbitration clause. It would be perverse to conclude that the legislature intended to change this rule when it required coverage disputes to be arbitrated. CT Page 16978
 "Section 38a-336 (c) was enacted by the legislature in response to this court's ruling in Frager v. Pennsylvania General Ins. Co., supra, 155 Conn. 274, that parties to an insurance contract could contract to exclude coverage issues from arbitration. See Chmielewsi v. Aetna Casualty Surety Co., supra, 218 Conn. 658. The purpose of the legislation was "avoid[ing] the institutional difficulty perceived by the court in Frager, namely, clogging the courts with piecemeal litigation, and leveling the procedural playing field by guarding against the possibility of insurers unfairly using their superior economic resources to delay the final resolution of claims by their insureds." Id. We recognize that, in this case, it is the injured party who is seeking "to delay the final resolution" of the case, and not the insurer. That fact, however, does not deter us from recognizing and implementing the well established legislative policy favoring arbitration. We also recognize the anomaly that, by enacting § 38a-336 (c) with the purpose of guarding against piecemeal litigation, the legislature unwittingly ensured that parties to an insurance contract can always obtain de novo judicial review of coverage issues. See American Universal Ins. Co. v. DelGreco, supra, 205 Conn. 191. It need hardly be said, however, that ensuring de novo review of uninsured motorist disputes was very far from being the purpose of that legislation.
 "The legislative policy favoring arbitration necessarily implies a policy favoring binding arbitration. See Chmielewsi v. Aetna Casualty Surety Co., supra, 218 Conn. 664 (recognizing state interest in avoiding burdens on judicial process and parties inherent in de novo review of arbitration proceedings). This, in turn, implies a legislative desire that, if an issue before the arbitrators fairly may be characterized as either a damages issue or a coverage issue subject to de novo review, the court should treat it as a damages issue. To do otherwise would thwart legislative policy by increasing the number of cases where "[arbitration] proceedings [are] merely way stations to the courts, and would thereby create the very risks that the compulsory arbitration provision was designed to avoid." Id, 660." [Footnotes omitted, internal quotation marks omitted.] CT Page 16979 Quigley-Dodd v. General Accident Ins. Co. of America, 256 Conn. 225, 245-48 (May 22, 2001).
This court recognizes the points at issue in the lengthy excerpt above are not involved in this case. Nevertheless the attitude of the Supreme Court is expressed; that attitude lends guidance here.
The court's analysis ends where it began, the statute:
 "Every such policy issued on or after October 1, 1971, which contains a provision for binding arbitration shall include a provision for final
determination of insurance coverage in such arbitration proceeding." [Emphasis added.] C.G.S. (Rev. to 1989) § 38-175c.
The court places great weight on the word, "final" in the statute. A determination that the limit of liability as written in the policy is the product of mutual mistake is a coverage question the arbitrators were empowered to determine. Likewise, the determination of what the policy should have stated in writing is also a coverage question for the arbitrators. It would indeed be incongruous for the court to hold that arbitrators then could not make a final resolution of the dispute by making a "final" award consistent with their determination of the coverage issues.
The court believes that the Supreme Court would place its fist, not just its thumb, on the side of the arbitrators' having the authority to make the award here.
The court denies Allstate's Application to Vacate, Correct or Modify Award.
The court grants Caltabiano's Motion to Confirm the Award.
Parker, J.